## HILLIARD *v.* BUNKER.

Opinion delivered July 21, 1900.

1.   Levying Court—Appropriations—Sufficiency of Record of Vote.— Where the record of the levying court shows that a majority of the justices were present, naming them, and that each and every item of the appropriations for the current year were taken up and voted on, and that each item was adopted by a unanimous vote, without naming those voting for each item, the record shows a sufficient compliance with Sand. & H. Dig., § 1275, providing that "the names of those members of the court voting in the affirmative and of those voting in the negative on all propositions or motions to levy a tax or appropriate any money shal' be entered at large on said record."   (Page 344.)

2. SAME—TERMS.—Sand. & H. Dig., § 1163, which provides that "when-ever it shall happen that the time for holding the county court and the circuit court in any county shall be on the same day, the county judge shall not commence his court until two weeks thereafter," has refer-ence only to the terms of the county court proper, and not to the terms of the levying court, which are fixed by section 6417, *id*. (Page 345.)

3. COURT HOUSE—CONTRACT—APPROPRIATION.—An appropriation by the the levying court for the purpose of building a county court house is not a prerequisite to the letting of a contract for the same by the county court. Following *Durrett* v. *Buxton*, 63 Ark. 397. (Page 347.)

4. LEVYING COURT—VALIDITY OF PROCEEDINGS.—The proceedings of the levying court are not invalid because the record was not signed by the members of the court present and participating. (Page 347.)

Appeal from Chicot Circuit Court in Chancery.

MARCUS L. HAWKINS, Judge.

*Robinson & Merritt,* for appellants. .

The appropriation was made by the county court at a time when the law did not provide for the holding of said court, and hence is *coram non judice* and void. 2 Ark. 229; 20 Ark. 77; 27 Ark. 414; 32 Ark. 687; Sand. & H. Dig., § 1163. The court will take judicial notice that October 2, 1899, was the first Monday in October. 38 Ark. 548. The court for levying taxes and making appropriations is a county court, within § 1163, Sand. & H. Dig. 32 Ark. 687. The chancery court has jurisdiction, and injunction is the proper and only remedy. Const. Ark. art. 16, § 13; 46 Ark. 471; 58 Ark. 187; 54 Ark. 645.

*Baldy Vinson,* for appellees and cross-appellants.

The levying court that met on October 2, 1899, was held on the proper day. Section 6417, Sand. & H. Dig., is not re-pealed or modified by § 1163, *id*. The county court is one of superior jurisdiction, and recording is not necessary to the validity of its acts. 59 Ark. 588; 40 Ark. 224. Courts have authority to adjourn from day to day. 2 Ark. 229; 48 Ark. 227; 55 Ark. 213. Even if the appropriation made by the quorum court is void, the contract sought to be enjoined is valid. No appropriation was required, it being the duty of the county court to enter into a contract for a good and sufficient

court house and jail.   63 Ark. 402; act March 18, 1879; 36 Ark. 641; Sand. & H. Dig., § 841.   The county court had exclusive jurisdiction of the matter originally.   Const. Ark. art. 7, § 28; 43 Ark. 67; 5 Ark. 21.   Chancery court has no power to issue the injunction asked.   33 Ark. 192; 34 Ark. 356; Const. Ark. art. 7, § 15; *id.* art. 7, § 30; *id.* art. 7, § 35; Sand. & H. Dig., §§ 6423–6425.

BUNN, C. J.   This is a bill in chancery to enjoin the court house and jail commissioners of Chicot county from letting a contract to build a court house and jail at Lake Village, as ordered by the county court.   The bill sets up various objections to the proceedings of the county court, both as a tax levying and appropriation court, and while sitting as the ordinary county court; to all of which objections the defendants interposed a demurrer, assigning sundry grounds therefor.   Most of the allegations to which the several specific demurrers are interposed are mere averments of objections to the manner in which the county court had assumed to exercise its undoubted jurisdiction.   To all of these allegations, except as to the character of the notice for bidders given by the commissioners, the demurrer was sustained by the chancellor, and properly so.   The chancellor also sustained the demurrer on the four general grounds, and in this also he was correct, in our view of the law in relation thereto, as will appear from what follows in considering the several questions necessary to be discussed as they arise in their order.

The history of the proceedings of the county court, both as an ordinary court and a levying court, and of the county commissioners, complained of in the complaint, is as follows, viz.:   On the 11th day of July, 1889, it being a day of the regular July term of the Chicot county court, that court, among other things, appointed John C. Connerly, O. C. Stearns, Walter Davis, N. W. Bunker and Baldy Vinson, as commissioners of the court, to examine into the condition of the court house and jail of said county, "with special reference to building a fire-proof vault for the records of the county, and with directions to report at the following October term." On the first Monday in October, 1899, it being the 2d day of

that month, the county court, with the justices of the peace of
the county, met to make appropriations and levy taxes for the
year, and to this court said county court commissioners re-
ported; and in their report they showed that the court house
and jail were both in such bad condition as to be incapable of
being repaired so as to make them serviceable for their pur-
poses, and they therefore earnestly recommended the building
of a new court house and jail, presenting to the court, at the
same time, such information on the subject as they had obtained
upon diligent inquiry and investigation as they thought would
be of benefit to the court in the premises. Upon considera-
tion the levying court approved the report and the recommen-
dation therein contained, and appropriated the sum of fifteen
thousand dollars for the building of a court house, and ten
thousand dollars for the building of a jail, and made an order
directing the regular county court to appoint commissioners for
that purpose, the judge thereof to be one of them, and the
record shows that court then adjourned for two weeks—that is,
until the 16th October, 1899. There is no further record of
the convening or adjournment of that court for that year. This
much appears, however: that at its meeting on the 2d of October
it made, succinctly and separately in their order, what appears
to be the appropriations for the current and ordinary expenses
of the county for the year, in addition to the court house and
jail appropriations aforesaid. The opening order of the levy-
ing court, which convened on the first Monday in October afore-
said, is as follows, to-wit: "Be it remembered that on this the
2d day of October, 1899, the same being the day fixed by law
for the meeting of the Chicot county court, were presiding
Hon. Charles F. Wells, Judge, and a majority of the justices
of the peace for said county, met at the court house in the town
of Lake Village, Chicot county, Arkansas, for the purpose of
making appropriations and levying taxes for the year 1899,
and Frank Strong, sheriff, and Johnson Chapman, clerk, also
being present, and the opening of same being proclaimed in
due form of law by the sheriff, the following proceedings were
had, to-wit: It is ordered by the court that the clerk call
the roll of justices of the peace, which was accordingly done,

when the following-named justices answered to their names, to—wit: [here follow the names of eleven justices of the peace], and, there being a majority of the qualified justices of the peace present, the court proceeded with its business in the following order, to-wit."     Then from page 31 to page 36, inclusive, of the transcript filed by defendants herein appear the minutes of the court making appropriations, except as to the court house and jail, of which the minutes appear on pages 23 and 24.     The following is the adjourning order: "The court now sitting for the purpose of making appropriations and levying taxes for the year 1899, having completed its duties, stands adjourned by operation of law for two weeks, or until October 16, 1899."     Then follow blank places for names of justices, but none appear to have been given.

The first question raised by the allegations of the complaint and demurrer thereto is, does the record show that a majority of the justices of the peace were present on the 2d of October, 1899?     The roll was called, and eleven answered to their names, and these names appear in the record of the call, and these were declared to be a majority of the justices of the peace of the county; and the minutes of the proceedings of that day further show that each and every item of the general appropriations for the current year were taken up one by one, and voted upon, and that each item was adopted by a unanimous vote; and that this was also true of the items of building the court house and jail and the appropriations therefor. The object of the minute record in such cases is to show that each item of appropriation received a majority vote of the members of the court present and participating, when these constitute a majority of the justices of the county.     The record of the proceedings in this case show a substantial compliance with the statute.     The rule which requires the yeas and nays to be called and taken down is applicable solely to legislative bodies.     Thus the constitution contains such a provision as to the legislature, and the statute requires the observance of it by town and city councils in voting upon certain classes of propositions, but there is no rule of the kind applicable to judicial bodies in this state.

The next and more serious question to be considered is, was the first Monday in October, 1899, fixed by law for the convening of the levying court? It is undoubtedly true that section 6417 of Sand. & H. Digest, which is a part of our revenue statute, fixed the 1st Monday in October as the day for the annual meetings of the levying courts of all the counties in the state; but it is contended in argument (although the issue is not clearly made in the complaint and demurrer thereto) that section 1163, *id.*, changes the time for convening of the levying court in counties where the holding of the circuit court is fixed for the same time, and where there is but one clerk. This section reads as follows, to-wit: "Whenever it shall happen that the time for holding the county court and the circuit court in any county shall be on the same day, the county judge shall not commence his court until two weeks thereafter. Provided, this section shall not apply to counties having separate county clerks, as provided for in section 19, article 7 of the constitution." This section, with some subsequent amendments, unimportant in this inquiry, was first enacted February 5, 1875, as part of an act fixing the time for holding the ordinary county courts in the state, and has always been referred to by the legislature under that head, and digested in that connection by the digesters. The time for holding the levying courts, as we have said, is and has always been a part of our revenue statute, and in each of the changes that have been made since 1875 there has been no express nor direct reference to the other. So, if section 1163 of the digest has any effect, as a repealing or amendatory statute, upon section 6417, it can only be by the vaguest implication. Our revenue act of March 28, 1883, from which the law is taken, was a general and comprehensive act on the subject, expressly repealing all laws in conflict therewith. If this postponing section (1163), which was then in force, had any reference to the revenue law at all, or to the time of holding the levying court, it was in direct conflict with section 9 of the act of 1883, and was repealed thereby; for the revenue statute was on a special subject, and took up the whole of that special subject, to which said section 9 was strictly germane, and the postponing section,

as subsequently amended, makes no reference to this section of the revenue statute, and, indeed, contains no repealing clause whatever. The language of section 1163 is significant in this, that the county judge is required not "to commence his court until two weeks afterwards." This language is more appropriately applied to the county court held by the judge (for such is his court) than when applied to a court composed of many persons, who are authorized to organize and proceed to business in his absence; thus impliedly denying him the effectual power to permit that court to lapse by his mere non-action. It will be observed that the section fixing the time for holding the annual levying court is uniform throughout the state, although in some counties the county courts proper do not hold on that day. It will be observed, also, that the section does not provide for the levying court to meet at the fall term of the regular county court, but on the 1st Monday in October of each year, indicating an independency of the terms of the county court proper; and if the times for holding the county courts proper were changed, and no reference be made to the section of the revenue statute fixing the time for holding the levying court, the latter would not be affected by the former, for, there being no conflict, there would be no repeal by implication or by general terms. We conclude, for these and other reasons that might be assigned, that the postponing section had reference only to the terms of the county court proper, and not to the terms of the levying court.

The question is not altogether free from doubt in the minds of some of us, and it would not be strange to find that the county courts throughout the state, which have been affected, have entertained and acted upon divergent views of the subject; for the enactments, it must be confessed, are confusing, although more in their arrangement than in their substance. It must be borne in mind that nothing here said must be considered as denying to the levying courts the power inherent in all superior courts of record to adjourn from time to time, as necessity or convenience may demand, provided no statute is violated, nor any interference is made with the uniform, systematic and orderly administration of our revenue laws.

In *Durrett* v. *Buxton*, 63 Ark. 397, this court held that sections 839, 841 of Sand. & H. Dig. are special statutes, and are not repealed by the subsequent statute, digested as section 1279, which forbids county courts or their agents from making contracts until appropriations have been made therefor. Section 841 leaves the whole question of building a court house and jail to the county court proper.

The objection that the record of the day's proceedings were not signed by the members of the court present and participating does not go to the validity of the proceedings so noted by the clerk as shown in the record. In the first place, the authorized officer having written up the minutes upon the record, and their verity not having been called in question, the county court having general jurisdiction of the subject-matter, and being a superior court, the truth of the minutes could be established by parol. *Lowenstein* v. *Caruth*, 59 Ark. 588; *Bobo* v. *State*, 40 Ark. 225.

The objection that the county court appointed three (only two were appointed), instead of one, is abstractly correct, but it only goes to the compensation to be allowed the commissioners for services. This bill is to restrain the letting of a contract on the notice given at first by the commissioners for informality, and the chancellor sustained the plaintiff in that regard. As we understand it, the commissioners then advertised in proper form for bidders, and the temporary restraining order granted by us was to restrain them from letting the contract on this last notice. In the case at bar the levying court made the appropriation required by section 1279, and so, in either event, whether a previous appropriation by the levying court was necessary, as provided in section 1279, for the erection of county buildings generally, or the order for the building of the court house and jail could be made by the county proper without such previous appropriation, as seems to be the effect of the rule of *Durrett* v. *Buxton*, *supra*, the order of the county court proper was valid, and binding upon the county.

In such an expensive matter as the building of a court house and jail, it is not of course expected, under ordinary cir-

cumstances, to cover the whole amount by the levy for one year, and in fact this cannot be done, since, together with the ordinary expenses of the county, the levy for erecting these buildings must not exceed in one year the rate of 5 mills. The amount and number of the annual installments necessary to cover the whole cost of the structure must be and is left to the discretion of the levying court, to be exercised so as to accomplish the result intended in a reasonable time.

Having thus disposed of all the questions that properly arise under the allegations of the bill and demurrer thereto, our conclusion is that the decree of the chancellor should be affirmed, and the temporary injunction granted by us should be dissolved, and it is so ordered.