COLFAX COUNTY, APPELLANT, v. BUTLER COUNTY, APPELLEE.

FILED MARCH 20, 1909.   No. 15,567.

1. **Counties: Bridge Repairs: Liability.** The county of Colfax served notice upon the county of Butler, in substance, requesting it to join in and to pay one-half of the cost of the repair of a wagon bridge over the Platte river, which request being ignored by Butler county, Colfax county proceeded under a contract to build practically a new bridge costing about $22,000. *Held*, Butler county not liable to Colfax county for any part of the cost of building such bridge.

2. ——: ——: NOTICE. A notice served upon a party sought to
be charged thereby should fairly state the intention of its author
and the scope of the enterprise contemplated by him.

APPEAL from the district court for Butler county:
BENJAMIN F. GOOD, JUDGE. *Affirmed.*

*John J. Sullivan, C. J. Phelps* and *B. F. Farrell,* for appellant.

*A. V. Thomas, E. C. Strode* and *L. S. Hastings, contra.*

DEAN, J.

This is an appeal from Butler county, wherein the
county of Colfax, appellant, hereinafter called plaintiff,
brought an action against the county of Butler, appellee,
hereinafter called defendant, to recover $11,050.96, being
one-half· the cost of building a wagon bridge by plaintiff
over the Platte river. At the conclusion of the trial the
court directed the jury to return a verdict in favor of the
defendant, upon which judgment was rendered, and plaintiff appeals.

The petition, in substance, alleges the continuous and
uninterrupted existence ever since 1884 of a public road
running north and south through both of said counties,
which crosses the Platte river at a point near the city of
Schuyler by means of a wooden wagon bridge about one-
half mile in length; that on June 6, 1904, the plaintiff's
board of commissioners adopted a resolution by its terms
reciting the unsafe condition of the bridge and plaintiff's
desire to repair it, and that defendant be requested to
enter into a joint contract with plaintiff providing for
each of the said counties to pay one-half of the expense of
such repair; that on August 15, 1904, the plaintiff's county
board adopted another resolution similar to the resolution
of June 6, but, in addition, reciting that "an emergency
exists," and "that the public good requires immediate
action," and providing "that a contract, drawn by the

county attorney of said county of Colfax, be entered into with Charles G. Sheeley for the said repairs of said bridge" in the event of the failure of Butler county to join in a contract for said purpose, and also providing "that a copy of this resolution and of said contract be served upon the board of supervisors of said county of Butler," and that said Butler county be requested "to incur and pay one-half the necessary expense of repairing the same in accordance with the terms of said contract"; that on August 16, 1904, as alleged by an amendment of plaintiff's petition, both resolutions were served upon the defendant by delivering certified copies thereof to the chairman of the county board of said defendant county; that on said August 16 a certified copy of the resolution of August 15, 1904, was left with the county clerk of the defendant county; that plaintiff on August 29, 1904, as alleged in said amendment, entered into a contract with Charles G. Sheeley, a bridge builder, "providing for all needful repairs of said bridge;  *  *  *  that the cost of said repairs  *  *  *  was $21,705.46."

The defendant's answer denies every allegation of plaintiff's petition except the one alleging the corporate capacity of the parties litigant, and alleges that certain residents of Schuyler entered into a written agreement with plaintiff to pay $7,000 of the cost of building the bridge in suit, provided the plaintiff would undertake the enterprise, which said agreement was accepted by plaintiff, and in consideration thereof plaintiff contracted for the building of said bridge; that prior to executing said contract and entering upon the work in pursuance thereof no demand was made on defendant by plaintiff to repair said old bridge or to join in such contract; that plaintiff, instead of repairing said bridge, fraudulently constructed a new bridge with the fraudulent purpose of deceiving and misleading defendant and its taxpayers; that the cost of said bridge was exorbitant; that upwards of $6,000 of the amount sought to be recovered is for the cost of building ice breaks which are no part of the bridge. The plain-

tiff's reply is in the usual form of denial of new matter in. the answer.

The action is sought to be maintained under sections 6146, 6147 and 6148, Ann. St. 1907, plaintiff relying more particularly upon the proviso clause of said section 6147, which is as follows: "Provided, that if either of such counties shall refuse to enter into contracts to carry out the provisions of this section, for the repair of any such bridge, it shall be lawful for the other of said counties to enter into such contract for all needful repairs, and recover by suit from the county so in default such proportion of the cost of making such repairs as it ought to pay, not exceeding one-half of the full amount so expended." In the specification of errors relied on, counsel for plaintiff in their brief contend: "(1) That the reconstruction of a bridge which was partly, substantially or wholly destroyed by fire, flood or other casualty is repairs within the meaning of the law imposing upon adjoining counties the duty to repair bridges over streams dividing such counties; (2) that notice by one county to another to join with it in repairing a bridge over a stream between the two counties is sufficient to make the county receiving such notice liable for one-half the expense necessarily incurred in making the bridge safe and passable, even though the work done amounts substantially or wholly to new construction." They concede in their argument the structure in question is practically a new bridge, but contend the work performed by Colfax county was "repairs" within the meaning of the statute.

Counsel for defendant contend that the notice served on the defendant county was so unreasonable as to time of service and so essentially defective in substance as to relieve the defendant of liability. The proof shows the original bridge was built in 1883 by a railroad company without expense to plaintiff or defendant, and that in March, 1903, a large part of it was taken out by a flood, leaving about 800 feet standing in the center of the stream, which was afterwards discovered to be practically

valueless. It also shows that certified copies of the resolutions of June 6 and of August 15, 1904, substantially in form and substance the same as those hereinbefore referred to, "and also a copy of a proposition or contract" between Sheeley and Colfax county, were served on the defendant on August 16, 1904, by the then county attorney of Colfax county; that on August 29, 1904, the contract between plaintiff and Sheeley was entered into in pursuance of said resolutions, and on September 3 the work was commenced on the bridge and completed November 10, 1904. The record does not disclose that the county board of the plaintiff heard officially from, or had any official communication with, the county board of the defendant between the date of the service of the said instruments and the date of entering into said contract, a period of 12 days, at the expiration whereof the plaintiff entered into said above contract involving an expenditure of about $22,000, one-half of which it was their intention to induce or compel the defendant to assume and pay. " 'Reasonable time' is defined to be so much time as is necessary, under the circumstances, to do conveniently what the contract or duty requires should be done in a particular case. * * * In determining what is a reasonable time or an unreasonable time, regard is to be had to the * * * facts of the particular case. * * * A reasonable time, when no time is specified, is a question of law, and depends on the subject matter and the situation of the parties." 7 Words & Phrases, 5977.

The plaintiff attempts to prove that a certified copy of the resolution of June 6, 1904, was served on the defendant in the same month by F. C. Egerton, a member of the county board of Colfax county, who went to David City evidently for that purpose, but, to the mind of the court, in this the plaintiff has utterly failed. Had the June 6 resolution been properly served upon defendant by Egerton, it is not probable plaintiff would have again served it on August 16, 1904, which the record clearly discloses was done at the same time that a copy of the

"emergency" resolution was served on defendant that was passed by the plaintiff's board. Ordinarily county boards, and political corporations generally, speak by the written record, and not by the individuals composing such bodies. The subject matter of the notice and of the contract must be considered in connection with the facts surrounding the case. A 'notice served upon a party sought to be charged thereby should fairly state the intention of its author and the scope of the enterprise contemplated by him. There should be no room left for doubt or conjecture. In *Dodge County v. Saunders County,* 77 Neb. 787, this court, in a well-considered opinion, speaking by Letton, J., says: "The notice served upon Saunders county contained no indication that any new ice breaks were to be constructed, but only provided for 'the needful repair of said bridge to make the same safe for passage.' * * * It is contended that these ice breaks are not repairs, and that they are not necessary for the purpose of repairing the bridge and making it safe for public travel. Whether this be so or not, it is very clear that their construction is not within the terms of the notice served upon Saunders county. It may well be that the county board of Saunders county was willing to entrust the expenditure of the amount of money necessary for 'the repairing of the bridge and making it safe for passage' to the discretion of the county board of Dodge county, and therefore took no action, but that, if it had been notified that the expenditure of nearly $800 was contemplated in the building of new ice breaks, it would have appeared at the time and place mentioned in the notice for the purpose of participating in the discussion as to the propriety and advisability of letting a contract for such purpose."

It is shown by the proof that less than $300 worth of material of the old bridge was used by Colfax county in the construction of the new bridge, and it is fairly inferable from the record that such old material was so used for the purpose of making the work appear to be "a repair

job," rather than new work.  On cross-examination upon this point the following appears from the testimony of F. C. Egerton, county commissioner of plaintiff in 1904: "Q. Didn't the county attorney advise you that he wanted you to leave something out of the old bridge in the new bridge so that you make it appear a repair job?  A. Yes, sir; he told us that we should use that (what) we could. Q. For the purpose of making it a repair job?  A. Yes, sir; we would have to use it to make it a repair job." Robert Z. Drake, called by the plaintiff as an expert witness and experienced bridge builder, on cross-examination testified: "A. Well, I think it would be rather a misuse of the word repair if $22,800 was new work on a $23,000 job."  He also testifies the ice breaks in suit cost from $5,500 to $6,000, and that he would not designate an ice break as part of a bridge.  John H. Sparks, a bridge builder of 24 years' experience, called on the part of plaintiff, on cross-examination testified, in substance, that a $22,000 bridge in which there was used $279.36 worth of old material was new construction, and that the term "bridge repairing" did not contemplate nor include "ice breaks."

Plaintiff contends for what we believe to be a strained construction of the word "repairs" as used in the statutes under consideration and as related to the facts of the case at bar.  The resolution and the contract by their terms use the word "repairs" in the ordinary sense.  The contract with Sheeley expressly provides that "whatever portion of said bridge is still standing and in a condition safe for public travel shall be left as it now is, and the portion repaired and built by said first party shall be joined upon and added thereto."  It has been shown that plaintiff's board of commissioners deemed it advisable to adopt a resolution reciting that an emergency existed, and that the public good required immediate action on its part looking toward the repair of the bridge.  The emergency to which the resolution refers, it seems from the record, was carefully nurtured from March, 1903, when

a considerable portion of the bridge was taken out by the flood, until midsummer, 1904, when the "emergency" as shown by the resolution was first given official recognition by the county board of plaintiff. An emergency is defined in 15 Cyc. 542, as: "Any event or occasional combination of circumstances which calls for immediate action or remedy; pressing necessity; exigency; a sudden or unexpected happening; an unforeseen occurrence or condition." The Century dictionary thus defines emergency: "A sudden or unexpected happening; an unforeseen occurrence or condition; specifically, a preplexing contingency or complication of circumstances; a sudden or unexpected occasion for action; exigency; pressing necessity."

We have carefully examined the entire record and find no error therein. The judgment of the district court is right, and is in all things

AFFIRMED.

REESE, C. J., not sitting. .