## AIRHEART *v.* WINFREE.

Opinion delivered May 3, 1926.

COUNTIES—BOND ISSUE—APPLICATION OF PROCEEDS.—Under Amendment No. 11, authorizing counties to issue bonds "to pay indebtedness outstanding at the time of the adoption of this amendment," and making it a felony for any officer to use any part of the proceeds of said bonds for any other purpose than the payment of such indebtedness, *held* that it would be unlawful for the county court to use any part of the proceeds of a bond issue to pay off indebtedness incurred by a county after December 7, 1924, the date of adoption of the amendment, though a portion of the prior indebtedness of the county had been discharged out of the general revenue fund of the county instead of out of the proceeds of the bond issue.

Appeal from Woodruff Circuit Court, Northern District; *E. D. Robertson,* Judge; affirmed.

*J. F. Summers,* for appellant.

*W. J. Dungan,* for appellee.

McCULLOCH, C. J. This is an action instituted by appellant in the circuit court of Woodruff County to compel the treasurer of the county, by mandamus, to pay a warrant held by appellant out of funds in the treasury arising from the sale of bonds pursuant to Amendment No. 11 of the Constitution—the amendment authorizing counties and municipalities to issue bonds to secure funds to pay indebtedness outstanding at the time of the adoption of this amendment. A demurrer was sustained to the complaint, from which complaint the facts appear as follows:

After the amendment was declared, in *Brickhouse* v. *Hill,* 167 Ark. 513, to have been legally adopted as a part of the Constitution, the county court of Woodruff County issued and sold bonds in the aggregate sum of $38,337.48 to pay the outstanding indebtedness of the county, and that sum was paid into the treasury. On December 7, 1924, the date on which the amendment became effective, there were outstanding warrants of Woodruff County in the aggregate sum of $38,337.48, the amount of the bond issue, but the bonds were not issued until long after that

time—the precise date not being stated in the pleadings. Between December 7, 1924, and the date the funds were secured from the sale of the bonds and paid into the treasury, warrants issued prior to December 7, 1924, in the aggregate sum of $26,479.49, were paid out of the general revenues of the county, leaving unpaid only the aggregate sum of $10,857.49 of the old indebtedness. Appellant is the holder of a warrant issued by the county court of Woodruff County on November 5, 1925, and he presented this warrant for payment, and, upon refusal by the treasurer to pay the warrant out of the funds arising from the sale of the bonds, he instituted this action to compel the treasurer to do so.

We decided in *Cumnock* v. *Little Rock,* 168 Ark. 777, that Amendment No. 11 is self-executing, and in *Matheny* v. *Independence County,* 169 Ark. 925, we held that the amendment became effective on December 7, 1924, so that the power to issue bonds applied only to indebtedness existing on that date. This disposes of appellant's contention that the funds arising from the sale of bonds should include indebtedness incurred up to the date of the approval of the enabling act, March 23, 1925. Acts 1925, p. 612.

The principal argument of counsel for appellant is that, since the declared purpose of Amendment No. 11, as construed in *Kirk* v. *High,* 169 Ark. 152, was to enable the counties of the State to "get out of debt," as long as the county continues to be in debt after the adoption of the amendment the authority to issue bonds continues, and that it extends to the maximum amount of the outstanding indebtedness at the time of the adoption of the amendment and includes warrants issued subsequent thereto, even though the amount of the old indebtedness has been reduced by payments out of the general revenue funds of the county. In other words, it is contended that, since the amount of the old indebtedness was borrowed and the old indebtedness has been reduced since the adoption of the amendment from an aggregate of $38,337.48 down to $10,857.49, the remainder of the funds should be used in

retiring warrants issued subsequent to the adoption of
the amendment. We cannot agree with counsel in this
argument, for we think it disregards the plain language
of the Constitution, as amended, which limits the issu-
ance of bonds to the procurement of funds "to pay in-
debtedness outstanding at the time of the adoption of
this amendment," and declares that it shall be a felony
for any officer to "use any part of the proceeds of said
bonds for any other purpose" than the payment of such
indebtedness. It is not the amount of the indebtedness
at the time of the adoption of the amendment which
necessarily determines the amount of the bond issue, for
that is determined solely by the amount of the old in-
debtedness in existence at the time the money is borrowed
and the bonds are issued. As long as the old indebted-
ness exists, the Constitution authorizes the borrowing of
money to pay off that indebtedness or so much of it as is
in existence at the time the bonds are issued. If the old
indebtedness has been reduced by payments out of funds
of the county, then the authority to issue bonds is limited
to the amount of the old indebtedness which remains un-
paid. Counsel seek in the argument to treat the war-
rants subsequently issued as in the nature of a renewal
of the old indebtedness, for the reason that the latter has
been reduced by the payment of funds out of the general
revenues, but we are of the opinion that warrants subse-
quently issued are in no sense a renewal of the old in-
debtedness. The payment operated as a complete re-
tirement of the old indebtedness to that extent, even
though paid out of the general revenues of the county.
It must be conceded that the county court had the
authority at the time of the issuance of the bonds to
determine the amount of the old indebtedness, and if, in
the meantime, there had been a reissue of warrants, which
evidenced the old indebtedness, it was within the prov-
ince of the county court to include the reissued war-
rants as a part of the old indebtedness. In other words,
the county court has authority to look to the form to
ascertain the substance in regard to the amount of

the old indebtedness. But it is not shown that the indebtedness represented by appellant's warrant was a part of the indebtedness of the county at the time of the adoption of the amendment, therefore it is not, either in form or substance, such a claim against the county as can be paid out of funds arising from the sale of bonds.

Counsel for appellant suggest in the argument that perplexities may arise with regard to the disposition of the surplus fund borrowed by the county if we hold that it cannot be used in the payment of warrants subsequently issued, but that question is not presented in the present case. The holders of the bonds are not parties to the suit, and we are not called on to determine whether or not they can be required to accept a refund of the unexpended balance in the treasury in payment of the bonds prior to maturity. All that we can decide now is that, under the plain language of the Constitution, the funds cannot be used for any purpose other than the discharge of indebtedness outstanding at the time of the adoption of the amendment.

The judgment of the circuit court is therefore affirmed.

SMITH, J., (dissenting). With due deference to the majority, they have, in my opinion, given to Amendment No. 11 a construction unnecessarily and unfortunately narrow. The facts alleged in the petition for mandamus are that on December 7, 1924, Woodruff County had an outstanding unpaid indebtedness of $38,331.18, and the total of this indebtedness has not been reduced, and remained at that amount at the time of the institution of this proceeding. The county has received revenues, but it has also had expenses, and the expenses have equaled the revenues, so that, when the proceeds of the sale of the bonds were paid into the county treasury, the county had outstanding the same amount of indebtedness it had when Amendment No. 11 became effective. It is true that between December 7, 1924, the date of the adoption of the amendment, and the date of the sale of the bonds, county warrants which were outstanding on December 7, 1924,

had been taken up or redeemed by being used in the payment of taxes and for other purposes for which they were receivable, but, while the old warrants were being thus used, new ones had been issued, so that the county's indebtedness continued to be what it had been before.

The word "indebtedness" is defined in Webster's New International Dictionary as follows: "State of being indebted; the sum owed; debts collectively."

The amendment does not limit the right to pay only the warrants outstanding at the time the amendment was adopted, but provides that the proceeds of the sale of the bonds may be used in the payment of *the indebtedness* existing at the time of the adoption of the amendment, and may be used for this purpose only. But the word "indebtedness" means the sum due and owing by the county and payable out of the county funds, and the meaning of the word "indebtedness" should not be confined and restricted to the particular warrants outstanding which merely evidenced the indebtedness.

There is nothing about the amendment which changes the dictionary meaning or the meaning one would ordinarily give the word "indebtedness," and the amendment confers authority to pay the indebtedness or the amount owing by a county at the time of the adoption of the amendment.

Suppose a county owed on December 7, 1924, $38,337.48, evidenced by many county warrants, and some of these warrants were received for the various county purposes for which they are receivable, and were canceled, but, while this was being done, the expenses of county government were being paid by the issuance of other warrants, so that, while $26,479.44 of warrants were being retired, that amount of new warrants had been issued, what would the county's indebtedness then be? Would it not be what it had been? If revenues and expenses are equal, would the indebtedness be changed?

The majority have given the amendment a construction so narrow that it is interpreted as if the amendment had read that with the proceeds of the bond sale the

county may pay and take up any warrants outstanding at the time the amendment was adopted. In my opinion, the amendment should not be circumscribed to apply only to the evidences of the debt, because the thing which may be paid is not the particular warrants outstanding when the amendment was adopted and evidencing in part the county's indebtedness, but the indebtedness itself may be paid out of the proceeds of the bond sale. And if the county's indebtedness was the same on the date the bonds were sold as it was on the date the amendment was adopted (and the petition for mandamus so alleges), I perceive no reason why that indebtedness may not be paid with the proceeds of the bond sale, although many changes have been made in the evidences of this indebtedness, as by canceling old and issuing new warrants.

I therefore respectfully dissent.