KLEINER *v.* PARKER.

Opinion delivered June 18, 1928.

672

W. A. Leach, for appellant.

John L. Ingram and L. P. Biggs, for appellee.

MEHAFFY, J. This suit was brought by appellant, on behalf of himself and other taxpayers of Arkansas County, against the county judge, county clerk, commissioners and contractors, for the purpose of enjoining the defendants from constructing a courthouse in the Northern District of said county, and to enjoin them from proceeding under the orders of the court or the contract, and to prohibit the clerk from issuing warrants, and the plaintiff asked that the contract be declared void.

The levying court appropriated the sum of $50,000 for the purpose of building a courthouse at Stuttgart, in the Northern District of said county, payable in warrants $5,000 a year out of the county revenues until the $50,000 was paid.

The county court appointed the commissioners for the purpose of contracting and supervising the construction of the courthouse. The commissioners reported at the October term of the county court, and submitted plans and specifications for the building to be erected. The report of the commissioners was approved, and they were ordered to advertise for bids for the construction of said building, at a cost not to exceed $50,000, and to enter into a contract for the erection of said building according to the plans and specifications, with persons

who would agree to do said work at the lowest price, not exceeding the amount appropriated. Commissioners were ordered to take a bond for the performance of the work, as provided by law.

Ogletree & Barrett bid and offered to do said work for $50,000, payable in county warrants, and this bid was the lowest bid made, and was accepted by the board, and a contract entered into. Their action was reported to the county court, and the court approved the contract and ordered the commissioners to proceed with the work of construction.

The appellant in his complaint alleged that the orders of the levying court and the county court were void, first, because said order was made on the 19th day of February, 1927, which was not a day of the regular term of said court, and no meeting for said day was legally called; second, that the Northern District of Arkansas county had no courthouse, and has never had, and it is alleged that the county court has no authority to contract for the erection of a new courthouse by warrants payable in the future; third, it is alleged that the annual income or revenue of the county is insufficient, after meeting the necessary expenditures for the life of the contract, to meet the payment of the warrants as they become due. It is also alleged that the courthouse could be built, according to plans and specifications, for $34,000 or $35,000, instead of $50,000. And the evidence showed that the courthouse, which will, if built according to plans and specifications and paid for in warrants payable over a number of years, cost $50,000, could be built for $34,000 or $35,000 cash.

Appellant's first contention is that the order of the county court was void because there was no emergency. The statute provides that, in case of an emergency, the county court may call a meeting of the quorum court, and said quorum court shall have authority to act upon any matter designated in the order of the county court calling for such meeting. It is admitted that the quorum court was called under § 1977 of Crawford & Moses'

Digest, and that the right to do so was based on the fact that an emergency existed.

Appellant insists that there is no emergency, because the Northern District of Arkansas County had no courthouse, has never had a courthouse, and that it has no authority to contract for the erection of a new courthouse by warrants payable in the future.

The order of the court calling a meeting of the quorum court recites, among other things, that the county's lease on the building in Stuttgart which it has been using as a courthouse in the Northern District, has expired, and that the county is forced to procure other quarters in which to hold court and keep its records in said district. And it further appears that, from year to year, the county is paying for rents on buildings for courthouse purposes large sums of money, which will, if continued, in a few years amount to enough to build a courthouse. The judgment of the county court recites:

"It is the opinion of the court, in view of the fact that the county is the owner of valuable lots, suitable and well located, that an appropriation should be made and a courthouse be constructed in Stuttgart on said lots as soon as practicable. And the court, being well advised and the premises being fully seen, hereby finds and declares that an emergency exists, and a meeting of the levying or quorum court is hereby called to meet at the courthouse in DeWitt, Arkansas, on the 19th day of February, 1927, at 10 o'clock A. M. on said day, for the purpose of considering and voting an appropriation for the construction of a courthouse in said district," etc.

Unless the county court can build a courthouse, it would have to make arrangements to rent or lease a building in which to hold court and keep the records, and the finding of the county court is that the county would soon pay enough in the way of rent to build a courthouse. Besides that, the county owns, according to the undisputed proof, valuable lots suitable and well located for a courthouse. It is true that the fact that

the county has the lots suitable for a courthouse and needs a courthouse would not justify the calling of the quorum court for the purpose of building a courthouse, unless an emergency existed. And the contention here made is that no emergency existed for calling the quorum court, under § 1977 of Crawford & Moses' Digest; that, even if the county had authority to build a courthouse and the money with which to build it, provision for building same would have to be made at a regular term of the quorum court, unless an emergency exists, and that no emergency is shown to exist.

Emergency, as used in the statute quoted, simply means a pressing necessity. And the county court having found that there was an emergency, and no proof being offered tending to disprove or contradict the findings and judgment of the court, a majority of the court is of the opinion that the facts found by the county court constitute an emergency.

While the writer does not believe an emergency existed under the facts in this case, it is the opinion of the court that there does exist a pressing necessity or emergency, and that therefore the county court had a right to call a meeting of the quorum court to act upon the matters designated in its order.

As to what constitutes an emergency, see *Colfax County* v. *Butler County*, 83 Neb. 803, 120 N. W. 444; *United States* v. *Sheridan-Kirk Contract Company*, 149 Fed. 809; *Mallon* v. *Board of Water Commissioners*, 144 Mo. App. 104, 128 S. W. 764.

The appellant says that, while he does not waive the question of the proper meeting place, he believes it was held at the proper place. We think that this is a correct conclusion.

Act 63 of the Acts of the General Assembly of 1913 establishes two judicial districts in Arkansas County, and it provides for the holding of circuit, chancery and probate courts and the court of common pleas in each district. But it does not provide for holding any county court at Stuttgart, in the Northern District. Therefore

the only place where county court can be held is at DeWitt, the county seat.

It is next insisted by the appellant that the order of the county court and the contract are void because the courthouse, under the contract awarded, will cost $50,000 in county warrants, payable $5,000 a year, when the evidence shows that the same courthouse could be built for $34,000 or $35,000 in cash. And it is insisted that this is in violation of § 1 of article 16 of the Constitution, which, among other things, prohibits any county from issuing any interest-bearing evidences of indebtedness.

The undisputed evidence in this case shows that the county advertised for bids according to law and that the contract was let to the lowest bidder, and there is no contention in this case and no evidence of any fraud or collusion. This is not a contract to pay interest, but it is a contract to build a courthouse for a specified sum of money, to be paid in annual installments, and this question has been settled by several decisions of this court, and it is no longer open to question whether a contract of this kind is valid.

In the case of *Campbell* v *High,* 176 Ark. 222, 2 S. W. (2d.) 1101, it was contended that the consideration provided for by the contract was fraudulently fixed at an exorbitant amount to include carrying charges or interest, because of the fact that the consideration was to be paid in warrants maturing in the future over a number of years, instead of in cash; that said contract calls for the payment of $199,500; that the cost of said courthouse and jail, if paid for in cash, would not exceed the sum of $150,000. In passing on that question the court said:

"In *Stone* v. *Mayo,* 135 Ark. 130, 204 S. W. 751, it was held that, where a contract to build a county courthouse was let to the lowest bidder, and there was no evidence of fraud or collusion between the contractor and the courthouse commissioners, there was a valid and binding contract between the parties. In discussing the principles of law governing cases of this kind the court said: 'That case controls this. Here was a straight contract

for the construction of the courthouse for $91,806.90. There was no evidence of any collusion among the bidders to perpetrate a fraud on the court to have the contract let at a higher price because of the depreciated value of the county warrants, nor is there any testimony to warrant the conclusion that the county court entered into collusion with the contractor to give him the contract at an increased price because the value of the county scrip was less than par. The fact that the bidders made inquiry and ascertained that the value of the county warrants was less than par, and made their bid with such knowledge, does not establish that there was collusion between them to stifle the bidding and to defraud the court by securing a contract at a higher price on account of the depreciated value of the county warrants. There is no allegation that the county court, or its commissioner, or the bidder, in securing the contract, were guilty of fraud." *Campbell* v. *High,* 176 Ark. 222, 2 S. W. (2d.) 1101. See also *Kirk* v. *High,* 169 Ark. 152, 273 S. W. 389; *Ivy* v. *Edwards,* 174 Ark. 1167, 298 S. W. 1006; *Lake* v. *Tatum,* 175 Ark. 90, 1 S. W. (2d.) 55; *Norman* v. *Blair,* ante p. 649.

We think the cases cited above settle all the questions raised in this case, and a review of the authorities here would serve no useful purpose  The evidence shows that the annual income or revenue is sufficient to meet the payments after paying the necessary expenses of the county. The authorities on all the questions involved in this case may be found reviewed in the cases above cited.

Under the authority of the recent decisions of this court, the decree of the chancellor is affirmed.