LUTER *v.* PULASKI COUNTY HOSPITAL ASSOCIATION.

Opinion delivered January 19, 1931.

*Robert J. Brown, Jr.,* for appellant.

*Rose, Hemingway, Cantrell & Loughborough,* for appellee.

SMITH, J. The complaint filed by appellant, a taxpayer of Pulaski County, alleges "That the Pulaski County Hospital Association is a * * * corporation * * * under the laws of the State of Arkansas, * * * and, as such corporation, it proposes to build and finance

a hospital by the sale of interest-bearing bonds, * * * which hospital it proposes to sell to Pulaski County, Arkansas, which sale will carry with it the assumption by said county of the said interest-bearing bonds * * *." The cost of the construction of the hospital will be about $600,000, a sum larger than the county can pay out of a single year's revenue, but the county can pay for the hospital by meeting the annual bond maturities, thus distributing the payment of the cost of the hospital over a period of years. The plaintiff alleges this proposed contract is violative of the Constitution and laws of the State, and prays that it be enjoined. His demurrer to the answer, which alleged the ability of the county to pay for the construction of the hospital by distributing its cost over a period of years, was overruled, and, as he stood on his demurrer to the answer, the complaint was dismissed, and he has appealed.

At the 1923 session of the General Assembly an Amendment to the Constitution was proposed to be voted on as amendment No. 11 (General Acts 1923, page 797). The amendment was adopted at the ensuing general election (*Brickhouse* v. *Hill,* 167 Ark. 513, 268 S. W. 865), and it has since been commonly referred to as amendment No. 11, and has been so designated in the numerous cases which construe or refer to it. The correct number of the amendment, according to Applegate's Constitution of Arkansas, Annotated, page 219, is No. 8, and it will be referred to herein by that number.

This amendment was designed to amend § 4 of article 12 of the Constitution by adding three paragraphs thereto, the first of which reads as follows:

"The fiscal affairs of counties, cities and incorporated towns shall be conducted on a sound financial basis, and no county court or levying board or agent of any county shall make or authorize any contract or make any allowance for any purpose whatsoever in excess of the revenue from all sources for the fiscal year in which said contract or allowance is made; nor shall any county judge, county clerk, or any other county officer, sign or issue any

scrip warrant or make any allowance in excess of the revenue from all sources for the current fiscal year; nor shall any city council, board of aldermen, board of public affairs, or commissioners, of any city of the first or second class, or any incorporated town, enter into any contract or make any allowance for any purpose whatsoever, or authorize the issuance of any contract or warrants, scrip or other evidence of indebtedness in excess of the revenue for such city or town for the current fiscal year; nor shall any mayor, city clerk, or recorder, or any other officer or officers, however designated, of any city of the first or second class or incorporated town, sign or issue any scrip, warrant or other certificate of indebtedness in excess of the revenue from all sources for the current fiscal year.''

A literal reading of the language quoted would compel the conclusion that the governmental agencies named were prohibited from contracting obligations of any character in any fiscal year in excess of the revenues for that year. In other words, they must pay as they go, and can go only so far as they pay, and are not to make or authorize any contract, or make any allowance, for any purpose whatsoever in excess of the revenue from all sources for the fiscal year in which said contract or allowance is made.

We have had frequent occasion to construe this amendment: *Kirk* v. *High,* 169 Ark. 152, 273 S. W. 389, 41 A. L. R. 782; *Babb* v. *El Dorado,* 170 Ark. 10, 278 S. W. 649; *Jewett* v. *Morris,* 170 Ark. 71, 278 S. W. 652; *Nelson* v. *Walker,* 170 Ark. 170, 279 S. W. 11; *Airheart* v. *Winfree,* 170 Ark. 1126, 282 S. W. 963; *Martin* v. *State ex rel Saline County,* 171 Ark. 576, 286 S. W. 873; *McGregor* v. *Miller,* 173 Ark. 459, 293 S. W. 30; *Independence County* v. *Lester,* 173 Ark. 796, 293 S. W. 743; *Dixie Culvert Mfg. Co.* v. *Perry County,* 174 Ark. 107, 294 S. W. 381; *Lybrand* v. *Wafford,* 174 Ark. 298, 296 S. W. 729; *Ivy* v. *Edwards,* 174 Ark. 1167, 298 S. W. 1006; *Polk County* v. *Mena Star Co.,* 175 Ark. 76, 298 S. W. 1002; *Lake* v. *Tatum,* 175 Ark. 90, 1 S. W. (2d) 554; *Jackson* v. *Madison County,* 175 Ark.

826, 300 S. W. 924; *Hagler* v. *Arkansas County,* 176 Ark. 115, 2 S. W. ('2d) 5; *Campbell* v. *High,* 176 Ark. 222, 2 S. W. ('2d) 1101; *Miller* v. *State use Woodruff County,* 176 Ark. 889, 1 S. W. (2d) 998; *Norman* v. *Blair,* 177 Ark. 649, 7 S. W. (2d) 328; *Kleiner* v. *Parker,* 177 Ark. 671, 8 S. W. (2d) 434; *Chestnutt* v. *Yates,* 177 Ark. 894, 9 S. W. (2d) 37; *Dixie Culvert Mfg. Co.* v. *Perry County,* 178 Ark. 454, 12 S. W. ('2d) 10; *Carter* v. *Cain,* 179 Ark. 79, 14 S. W. (2d) 250.

The first of these cases, that reported under the style of *Kirk* v. *High,* was a consolidated case involving appeals from Lonoke and Nevada counties. In the Lonoke County case it was proposed to build a court-house, and in the Nevada County case a jail, and it was conceded that neither county could proceed if the amendment were given a literal interpretation, for the reason that the revenues of the counties were insufficient to pay the construction cost of the proposed buildings in a single year.

The construction of the amendment, in view of the practical problem presented, gave us the greatest concern, and, as appears from the report of the case, three opinions were written.

The present Chief Justice was of the opinion that courthouses and jails were absolutely necessary in the administration of the State Government, and that the amendment was not designed to take away the powers of counties to repair and erect courthouses and jails which were possessed before its adoption. Judge McCulloch, the then Chief Justice, construed the amendment literally and expressed the view, in a dissenting opinion, that neither courthouses nor jails could be erected unless they could be paid for entirely out of the revenues of the year in which the construction contract was made.

The majority, however, took an intermediate position between the views of the former and the present Chief Justices.

In the majority opinion it was said: "But it does not mean that the county without a courthouse or a jail

must dispense with these essentials because they cannot be fully paid for in one year. Counties may contract for these buildings and may apportion the cost over a number of years, but in doing so the other necessary expenses of Government must be taken into account, and no authority be conferred upon the officers charged with the duty of issuing vouchers or warrants to issue them for a sum which will exceed the total revenues for any single year.''

It also appears, from the majority opinion, that the majority reached the conclusion announced in view of what Chief Justice Bunn had said in the case of *Hilliard v. Bunker,* 68 Ark. 340, 58 S. W. 362, that ''In such an expensive matter as the building of a courthouse and jail, it is not of course expected, under ordinary circumstances, to cover the whole amount by the levy for one year, and in fact this cannot be done, since, together with the ordinary expenses of the county, the levy for erecting these buildings must not exceed in one year the rate of 5 mills. The amount and number of the annual installments necessary to cover the whole cost of the structure must be and is left to the discretion of the levying court, to be exercised so as to accomplish the result intended in a reasonable time.''

It was the opinion of the majority that, in view of the necessity for courthouses and jails, in order that counties might function as contemplated by law, and in view of the known inability to discharge so great an expense out of a single year's revenues, it was not the purpose of the amendment to stop the erection of courthouses and jails, as would have been done if the amendment were literally construed.

A most unsatisfactory state of affairs arose after the rendition of this opinion, as is evidenced by the facts stated in the opinions above cited. We had said, and had reiterated the holding, that courthouses and jails, however necessary, could not be erected unless their cost could be so distributed over future years in such installments of payments as not to impair the ability of the counties to function and to pay the other necessary ex-

penses of county government after paying these install-
ments. We had held, to quote a headnote in the case of
*McGregor* v. *Miller,* 173 Ark. 459, 293 S. W. 30, that
"Under Constitution, Amendment 11, county warrants
issued, as well as contracts made, in excess of revenues
for a fiscal year, are void, and the action of the county
court in issuing such a warrant or in making an allow-
ance on which such a warrant might later be issued is
*coram non judice."*

There was always some uncertainty and difference of
opinion as to whether a county could build a courthouse
or jail, as appears from the facts stated in the above
cited opinions. Indeed, in the case of *Lake* v. *Tatum,*
175 Ark. 90, 1 S. W. (2d) 554, after holding that Union
County could not build a courthouse, we held, on rehear-
ing, that it could do so.

With the law in this uncertain state, the General
Assembly, at its 1927 Session, proposed an amendment
to be voted on as amendment No. 17 (Acts 1927, page
1192), which authorizes counties, upon the conditions
there provided, to issue bonds to build courthouses and
jails. This amendment was adopted at the general elec-
tion in 1928, and is designated as amendment No. 15, in
the order of its adoption, in Applegate's Annotated Con-
stitution, page 235.

We were called upon to construe these amendments
as related to each other in the case of *Carter* v. *Cain,* 179
Ark. 79, 14 S. W. (2d) 250, and, after reviewing the
opinion in *Kirk* v. *High, supra,* it was there said: "After
the court had construed this amendment No. 11 to mean
that a county could go in debt for courthouses and jails,
the people then adopted amendment No. 17, vesting the
authority and right to construct courthouses and jails
and to levy taxes to pay for them, in the qualified electors
of the county. Amendment No. 17 was evidently adopted
for the very purpose of meeting the decision of this court
and accomplishing what they thought was accomplished
by amendment No. 11, when adopted. That is, to prevent
counties from going into debt, and provide a method for

building and paying for courthouses and jails. But it is insisted that there are two methods now. We do not agree to this contention.''

Amendment No. 8 must now, since the adoption of amendment No. 15, be construed, as it reads, literally, that is, that contracts and allowances in any year cannot exceed the revenues of that year, not even for a purpose so necessary as that of building courthouses and jails.

It is true the instant case involves a hospital, and not a courthouse or a jail, but, in view of the history of these amendments, we would be unwilling to hold that a county may go in debt for a hospital, when it cannot do so for a courthouse or jail except upon a vote of the people. It is a matter of common knowledge that most of the counties of the State had either a courthouse or a jail, or both, while very few owned a hospital, and the opinion in *Kirk* v. *High* related only to courthouses and jails, which we held were not covered by amendment No. 8, for the reasons stated. This exception to the amendment has now been stricken out by the adoption of amendment No. 15, and we are unwilling to hold there is any other exception.

We, therefore, conclude that the action of the county in assuming the obligation of buying this hospital should be enjoined, for the reason that it is admitted that its cost cannot be paid out of a single year's revenues.

The decree of the court below will therefore be reversed, and the cause remanded with directions to enter an order enjoining the county judge, as prayed, from proceeding further towards the purchase of the hospital.