WALKER *v.* GLADISH, COUNTY JUDGE.

4-5868                                      134 S. W. 2d 541

Opinion delivered December 18, 1939.

*Holland & Taylor,* for appellant.

*Bruce Ivy* and *G. B. Segraves,* for appellee.

BAKER, J. From the chancellor's refusal to enjoin officers from holding a special election December 30, 1939, Walker has appealed.

The county court found that on November 6, 1928, valid county warrants amounting to $68,864.68 were outstanding; that such warrants were issued subsequent to December 7, 1924, to pay for two jails, but that they

had been paid. It was further found that action of the collector in receiving some of the warrants from taxpayers in lieu of cash, and payment of others by the treasurer, had resulted in a deficit of $57,376.18 at the time the court's findings were made November 2, 1939, and that the deficit [was] ". . . in effect an indebtedness of Mississippi county existing at the time of the adoption of Amendment No. 17; . . . that under [the amendment] the county is authorized to issue jail funding bonds to take up said indebtedness . . . if a majority of the electors authorize such bonds at an election duly held for that purpose."

Appellant's contention is that the deficit was not caused by payments from the county general fund nor by acceptance of warrants on taxes.

Evidence upon which the county court made its finding is a letter from accountants other than those attached to the state auditorial department. It was stipulated that this exhibit be introduced ". . . without the formality of calling either of said accountants to testify."

The letter, although signed by men of high repute and known ability, does not purport to impart information gathered from original sources. It is copied in the margin.[1] The hearsay nature of this communication as evidence is shown by its recitations.

The record justifies belief here that the county court used the term "valid warrants" in reliance upon the ac-

---

[1] The letter, dated November 16, 1939, and addressed to S. L. Gladish, county judge, follows: "From audit reports of P. E. Cooley, county auditor, on the affairs of Mississippi county, we find that the indebtedness of the general fund of Mississippi county as at November 10, 1928, was reflected as $57,331.93. An audit report by [another firm of certified public accountants] reflects an indebtedness of the general fund as at December 31, 1928, of $68,864.68. These reports show that this indebtedness was evidenced as follows: Outstanding general warrants November 10, 1928 $16 212.09; December 31, 1928, $30,491.68. Approved claims November 10, 1928 $12.425.85; December 31, 1928, $9.679.01. Jail warrants November 10, 1928, $28,693.09; December 31, 1928, $28,693.99. Total [November 10. 1928, items], $57,331.93; [December 31, 1928] $68,864.68. From a further examination of financial statements and reports prepared by county auditor Cooley and by the county auditorial department of the state comptroller's office, setting out the indebtedness as at various dates during the period January 1, 1929, to January 1, 1939, and taking into consideration explanations of these statements, . . . we are of the opinion that the total indebtedness of the general fund has never been less than $57,382.21 at any date between January 1, 1929, and January 1, 1939. We are also of the opinion that the entire indebtedness as at December 31, 1928, could be attributed to outstanding jail warrants and to a detriment to the general fund arising from the redemption of jail warrants from this fund."

countants' letter, there being no reference to other evidence. Nor was there reference to any evidence.

Amendment No. 17, adopted November 6, 1928, authorizes issuance of bonds to fund any indebtedness existing on the effective date of the amendment ". . . incurred in building, constructing, or extending any county courthouse or jail."

It was decided in *Kirk* v. *High,* 169 Ark. 152, 273 S. W. 389, 41 A. L. R. 782, that Amendment No. 10[2] did not prohibit counties from incurring obligations in excess of the year's revenues; that if construction costs of jails and courthouses should be extended in such manner that interest and maturities payable in any designated year would not, when added to necessary governmental expenditures for such year, exceed the revenue, the fact of future obligation would not render the contract void. The illustration in the opinion is: "For instance, if Lonoke county has revenues not exceeding $60,000, and proposes to spend $10,000 a year on a court house, then all other expenditures must not exceed $50,000 per year."

The restrictions upon counties imposed by Amendment No. 10, as ameliorated in *Kirk* v. *High,* were met by adoption of Amendment No. 17. In *Carter* v. *Cain,* 179 Ark. 79, 14 S. W. 2d 250, it was said that "Amendment No. 17 was evidently adopted for the very purpose of meeting the decision of this court and accomplishing what [the people] thought was accomplished by Amendment No. 11. That is, to prevent counties from going into debt, and provide a method for building and paying for courthouses and jails." See *Boydstun* v. *Condray,* 183 Ark. 336, 36 S. W. 2d 64; *Irwin* v. *Alexander,* 184 Ark. 572, 43 S. W. 2d 85.

Amendment No. 10 was followed by a legislative enabling or facilitating act[3] which gave to an aggrieved taxpayer the right to question correctness of the county court order. No such accommodation seems to have been extended in respect of Amendment No. 17, although the constitution of 1874 (art. 7, § 33) allows appeals to the circuit court from all county court judgments,

2 The amendment is referred to as No. 11.
3 Act 210 of 1925. See, also, act 93 of 1927.

to be taken under such regulations as may be prescribed by law. See Pope's Digest, § 2913.

In the absence of authority in Amendment No. 17 for appeal from the county court's adjudication of outstanding indebtedness—a requirement precedent to calling an election—it follows that the court's determination of the amount of the indebtedness it is proposed to fund goes to the electors unchallenged, unless resort is had to injunction. In this situation reviewing courts must scrutinize the record for evidence to sustain processes by which determination of the fact has been arrived at.

The first error apparent on the face of the record [4] is the conflict between the county court's finding that an indebtedness of $68,864.68 existed November 6, 1928, and the opinion of accountants that this was the deficit December 31. The accountants attest an indebtedness of $57,331.93 November 10.

The accountants say (on information and belief) that jail warrants outstanding November 10th were $28,693.99, a sum less by $40,170.69 than that ascertained by the county court to have been outstanding on the sixth.

The audit shows outstanding general warrants to have been $16,212.09 November 10th, an increase of $14,279.59 between that date and the 31st of December.

Approved claims November 10th were $12,425.85. That class of obligations December 31st was $9,679.01, a decrease of $2,746.84.

The three items—general warrants, approved claims, and jail warrants, listed by auditors and classified outstanding November 10th, amount to $57,331.93. The same items December 31st were $68,864.68, a net increase of $11,532.75.

If, as the county court found, $68,864.68 of jail warrants were in existence November 6th, then, in view of the auditors' statement that on November 10th only $28,693.99 in warrants of this class of indebtedness was outstanding, it follows that during the intervening four days payments were $40,170.69; and yet, the account-

[4] The record in this case, because of the stipulation, includes the judgment and the matter it was agreed might be introduced without calling the accountants.

ants on December 31st say the entire county debt, inclusive of general warrants, approved claims, and jail warrants, was $68,864.68—the exact figures the county court used in determining the November 6th indebtedness.

*Hagler* v. *Arkansas County,* 176 Ark. 115, 2 S. W. 2d 5, overruled *Airheart* v. *Winfree,* 170 Ark. 1126, 282 S. W. 963. In the Hagler Case it was held that under act 30 of 1927 a county which had issued bonds to pay an indebtedness existing prior to October 7, 1924, was entitled to pay any indebtedness existing prior to December 7, 1924, such payment to be made from a surplus in the bond account; or, in the alternative, supplemental bonds might be issued to retire the indebtedness if funds in the surplus account proved insufficient. The legislative act was intended as a relief measure covering the period from October 7, when Amendment No. 10 was adopted, to December 7, its effective date. See *Matheney* v. *Independence County,* 169 Ark. 925, 277 S. W. 22.

Appellees insist that the Hagler case is authority for issuance of bonds in the instant case to fund jail warrants outstanding November 6, 1928. They think the fact of subsequent payment is no bar to the right, the theory being that the debt, once having existed, was not destroyed by the county's conduct in using general funds for retirement of the warrants or in accepting them in payment of taxes.

If we should hold (in view of the record we do not so decide at this time) that funding bonds may be issued in an amount not in excess of outstanding jail warrants November 6, 1928, shown November 10th to have been $28,693.99 and the same amount December 31 of that year, it would be necessary to predicate such holding upon facts showing that such jail warrants[5] and the interest thereon matured subsequent to November 6, 1928.

Under Amendment No. 10 and the holding in *Kirk* v. *High,* if payment of jail warrants from December 7, 1924, to November 6, 1928, necessitated carrying over

[5] These warrants were, in fact, issued against the general fund, but [presumably] bore indorsements showing the purpose for which they were issued.

to a succeeding year other county general warrants or claims, the excess as to jail warrants due in that year, and general warrants and claims, would be void unless the indebtedness accrued prior to December 7, 1924, and had not thereafter been funded.

Amendment No. 10 does not permit relief in the case at bar merely because payment of jail warrants during the four-year period occasioned a general revenue deficit.

It must be held, therefore, that the agreed statement upon which the county court predicated its findings of facts does not support the conclusion.

The judgment is reversed and the cause is remanded with directions to grant the injunction, but with leave to appellees to have the state auditorial department or the accountants who appear of record in this case make a detailed examination and file a report to be made an exhibit to any future order showing (1) the county's indebtedness December 7, 1924; (2) the amount of bonds, if any, issued under authority of Amendment No. 10, and how proceeds were applied; (3) the date of issuance of the so-called jail warrants, maturities, etc., and the manner and date of all payments; (4) the amount of claims and outstanding warrants, listed separately as to totals, which at the end of each year subsequent to 1924 constituted an indebtedness; (5) the available revenues with which to meet such warrants and claims; (6) the date and manner of payments of warrants in excess of the revenues for any of the years in question if any.