STONE v. MAYO.

Opinion delivered July 1, 1918.

COURTHOUSE—CONTRACT FOR BUILDING—CONTRACT PRICE.—A contract to build a county courthouse was let to the lowest bidder, the bid reading "* * * * we propose to furnish all labor and materials to build courthouse at Harrisburg, * * * for the sum of $91,000, payment to be made in courthouse warrants at 70-125 base." *Held,* there being no evidence of collusion for fraud, that this was a straight contract for the construction of the courthouse for $91,000.

Appeal from Poinsett Chancery Court; *Archer Wheatley,* Chancellor; affirmed.

*H. P. Maddox,* for appellant.

The bid, which was the basis of the final contract, was void under Kirby's Digest, sections 1452-3, prohibiting the payment in warrants of a larger sum than would be required in money. 44 Ark. 437.

*Lamb & Frierson,* for appellees.

The bid and contract are valid, and fix the price at $91,000, and not 70⅛ per cent. of that sum. There was no fraud nor collusion, and the bid was the lowest. The price was fair and reasonable. 103 Ark. 468. The "70-125 base" was a mere notation indicating the price at which warrants could be sold. 44 Ark. 437 is an entirely different case, and does not apply.

### STATEMENT OF FACTS.

This suit was instituted by the appellants, the taxpayers of Poinsett County, against the appellee, the county judge, clerk and treasurer of Poinsett County, and the contractor, architect and courthouse commissioners, to restrain them from doing any acts toward the erection of a courthouse in Harrisburg, Poinsett County.

The appellants alleged that proceedings had been regularly conducted in the levying and county courts providing for the erection of a courthouse at Harrisburg. That a contract had been let to the lowest bidder whose bid was as follows:

"T. A. Bettis, Commissioner: We propose to furnish all labor and material to build courthouse at Harrisburg, Arkansas, according to revised plans and specifications prepared by Mitchell Seligman, architect, for the sum of $91,000, payment to be made in courthouse warrants at 70.125 base."

The other bids were in the same form. Appellants alleged that the language of the bid means that the contract price is $63,813.75. They alleged that the contract was void, and prayed that the appellees be restrained from paying out any more than $63,813.75, for the construction of the courthouse.

The answer denied that the bid and contract contemplated that the construction of the courthouse was for $63,813.75, and alleged that the bid and contract contemplated construction of the courthouse for $91,000 in county warrants. They denied that the contract was void and admitted that unless restrained it would be carried out by the final payment of $91,000 upon the completion of the contract.

The provision of the contract challenged here is as follows: "The commissioner agrees to pay the contractor in county warrants of Poinsett County, Arkansas, for the full performance of the contract and its acceptance by the commissioner $91,816.91, subject to additions and deductions as provided for in the general conditions of the contract."

The contractor testified that he bid in the form set out above; that he was to receive $91,000 in county warrants under the terms of his bid. He expected to sell the warrants for 70⅛ per cent. The "70-125 base" meant the best price the bond buyers offered. There was no understanding or agreement with the county court about that. The court was to pay witness $91,000 without regard to the price witness might receive for the warrants whether 60, 75 or 100 cents on the dollar. Witness put the "70-125 base" in the bid more as a record of the proposition that witness had from the bond buyers. It was not a part of witness' dealing with county officials or the commissioners, and there was no such understanding or agreement with any one.

The county judge testified that the contractor submitted a bid to construct the courthouse for $91,000 in county warrants and that the clause "70-125 base" was added. The bid was treated as one of $91,000 for the construction of the courthouse. Nothing was said about issuing warrants for only 70⅛ per cent. of $91,000. There were four bidders. The warrants were to be issued and delivered to the contractor. That is as far as witness had any understanding about it. Witness realized that the contractor had to sell them to get money, but witness had nothing to do with his contract of sale, except

to refer him to certain people who might buy the warrants. The contractor to whom the bid was let was the lowest bidder. Each contractor examined all bids, discussed the matter freely and went away satisfied. The same clause (70-125 base) was in other bids.

The undisputed evidence shows that $91,000 was a reasonable price to pay a contractor and the contract could not be let at the time of the institution of this suit for that price. It was shown that the bid was originally for $91,000, but before the contract was let was raised to $91,806.90, on account of certain changes in the plans that were agreed upon. This was the lowest bid, being $35,000 less than the highest bidder.

The court found that the bid of the contractor for the construction of the courthouse contemplated the issuance of $91,000 in county warrants as the consideration for the contract and did not contemplate the issuance of 70⅛ per cent. of $91,000 or $63,813.75 only.

The court further found that the bid of the contractor was submitted in open competition, and that four contractors bid for such construction and that the bid of the contractor, to whom the contract was let, was the lowest and best bid; and that no bidder nor any officer were misled in any way by the terms of said bid.

The court thereupon entered a decree dismissing the complaint for want of equity, from which is this appeal.

WOOD, J., (after stating the facts). In *Watkins* v. *Stough,* 103 Ark. 468- 471, there was a contract let for the construction of certain bridges to the lowest bidder at public outcry. The facts are very similar to the case at bar. There was testimony tending to show that when the contract was offered at public outcry the county judge made a public announcement that county warrants could be cashed at 50-55 cents on the dollar. The contract was let for the construction of the bridge at $3.40 per linear foot. The contract was attacked on the ground that the bid for the work was based on depreciated county scrip and that a fair cash price for construction of the bridges would have been $2 per linear foot. In that case the trial court found that the contractor used no fraud or decep-

tion in procuring the contract and was the lowest bidder for the contract. In that case we said: "When a contract, free from fraud or collusion, is entered into pursuant to the terms of the statute for the construction of a bridge, and the work is done according to the contract, the stipulated price becomes a valid claim against the county, payable, as are other claims, in warrants on the treasury. If the contract does not disclose on its face an illegal agreement for an increase of price on account of payment in depreciated warrants, or unless the proof establishes collusion to increase the bids on account of payment in depreciated warrants, then the reasons for the successful bidder fixing the amount of his bid can not be inquired into for the purpose of avoiding the contract."

That case controls this. Here was a straight contract for the construction of the courthouse for $91,-806.90. There was no evidence of any collusion among the bidders to perpetrate a fraud on the court to have the contract let at a higher price because of the depreciated value of the county warrants, nor is there any testimony to warrant the conclusion that the county court entered into a collusion with the contractor to give him the contract at an increased price because the value of the county scrip was less than par. The fact that the bidders made inquiry and ascertained that the value of the county warrants was less than par and made their bid with such knowledge does not establish that there was a collusion between them to stifle the bidding and to defraud the court by securing a contract at a higher price on account of the depreciated value of the county warrants. There is no allegation that the county court, or its commissioner, or the bidder, in securing the contract, were guilty of any fraud.

The complaint sets out the bid which, strictly construed, on its face calls for the payment of $91,000 in county warrants at "70-125 base," which would necessitate the issuance of county warrants to the amount of about $118,000. If the contract had been expressed in these terms there would be grounds for saying that upon

its face it was a fraud upon the court, but as already stated the contract calls for the payment of $91,000 in county warrants without any increase of the contract price on account of the warrants being below par.

The decree is, therefore, correct and is affirmed.