## FRANKLIN COUNTY, ARK., v. HARRIMAN NAT. BANK.

## SAME v. SULLIVAN COUNTY NAT. BANK.

Circuit Court of Appeals, Eighth Circuit.
April 18, 1927.

Rehearing Denied June 8, 1927.

Nos. 7589, 7590.

1. Counties ⬳165—County warrants, containing essential requirements of statute, held invalid only to extent they contained provisions not authorized by statute (Crawford & Moses' Dig. Ark. § 1999).

County warrants issued in payment of contract to build courthouse, not strictly following form required by Crawford & Moses' Dig. Ark. § 1999, but containing all essential requirements of such statute, and in addition providing that warrants were payable at New York bank on certain day, and pledging faith, credit, and resources of county to punctual payment, *held* invalid only to extent they contained provisions not authorized by statute.

2. Counties ⬳164—County is forbidden to agree to or make payment through warrants, except on cash par value basis (Crawford & Moses' Dig. Ark. § 2028).

Under Crawford & Moses' Dig. Ark. § 2028, county is forbidden to agree to or make payment through warrants, except on a cash par value basis.

3. Courts ⬳366(8)—Decision of Arkansas Supreme Court, construing state statute governing issuance of county warrants, held binding on federal court (Crawford & Moses' Dig. Ark. § 2028).

Decision of Arkansas Supreme Court that, under Crawford & Moses' Dig. Ark. § 2028, county may issue warrants on less than a cash par value basis in payment of contract awarded to lowest competitive bidder, where there is no fraud or collusion among bidders to have contract let at a higher price because of depreciated value of county warrants, is binding on federal court.

4. Pleading ⬳399—Allegations of fraud and collusion fall, unless sustained by evidence.

Allegations of fraud and collusion fall, unless sustained by evidence.

5. Counties ⬳165—County warrants issued in payment of contract awarded lowest competitive bidder making bid on basis of depreciated value of county warrants held valid (Crawford & Moses' Dig. Ark. § 2028).

Where contract for construction of courthouse awarded to lowest competitive bidder made no reference to value of county warrants, but commissioners and county court, in approving and accepting bid, understood that contractor made bid on basis that county warrants were worth 60 cents on the dollar, *held*, that warrants issued in payment of contract were valid, in view of highest state court's construction of Crawford & Moses' Dig. Ark. § 2028, requiring warrants to be issued only on cash par value basis.

In Error to the District Court of the United States for the Western District of Arkansas; Frank A. Youmans, J.

Actions by the Harriman National Bank and by the Sullivan County National Bank against Franklin County, Ark. Judgments for plaintiffs, and defendant brings error. Affirmed.

Vincent M. Miles, of Ft. Smith, Ark. (Dave Partain, of Van Buren, Ark., and Thomas B. Pryor, of Ft. Smith, Ark., on the brief), for plaintiff in error.

Ben D. Brickhouse, Linwood L. Brickhouse, and J. W. House, Jr., all of Little Rock, Ark., for defendants in error.

Before STONE and KENYON, Circuit Judges, and POLLOCK, District Judge.

STONE, Circuit Judge. These are separate writs of error from judgments, in two consolidated cases, according recovery on county warrants.

These warrants were issued in payment of a contract to build a courthouse. The statutes of Arkansas prescribe the method of making such contract as follows: Commissioners are appointed by the county court who receive bids and enter into a tentative contract; they then report such action to the court and, if their action and the contract is approved, it becomes binding. Such was the procedure here. This contract was made, the courthouse built and the warrants delivered to the contractor in pursuance of and in the amounts called for by the contract.

[1] Two contentions urging invalidity of these warrants are presented here. One relates to the form of the warrant. Section 1999 of Crawford & Moses' Digest of the Laws of Arkansas prescribes a form of county warrant. That form was not followed here. However, these warrants contain all of the essential requirements of the statutory form. In addition, they contain other matters such as prescribing that the warrants are payable at a bank in New York upon a day named and pledging the "faith, credit and resources" of the county to the "punctual payment of this warrant in accordance with its terms." This court has recently held (Madison Bond Co. v. Scott County, Arkansas, 289 F. 37, 40) that a warrant issued under the above statute is not void because it does not follow the precise statutory form, saying: "If the indebtedness evidenced by them is justly owing, and the stipulation for payment at a future date is without authority of law, the stipu-

lation may well be disregarded and judgment given accordingly." Under the authority of that case, the provisions in these present warrants which go beyond the power given in the statute may be treated as invalid and inoperative without destroying the entire warrant and the warrants upheld as obligations of the county to be treated and paid in accordance with the statutes governing payment of warrants issued in due form. [2] The second contention is that these warrants are void because issued in direct violation of section 2028 of Crawford & Moses' Digest. That section is as follows:

"It shall be unlawful for any county court in this state to allow any greater sum for any account, claim, demand or fee bill against the county than the amount actually due, estimating a dollar in county warrants as at par with a dollar in lawful money of the United States, dollar for dollar, according to the legal or ordinary and customary compensation for services rendered, materials furnished, salaries or fees of officers, when the same are paid in said lawful money; nor shall any county court direct the issue of any warrants, nor, if directed in violation of this act, shall any clerk issue any such warrant upon such accounts, claims, demands or fee bills for more than the actual amount so allowed, a dollar in lawful money of the United States and no more."

The meaning of this section is clearly that the county is forbidden to agree to or to make payment through warrants except upon a cash par value basis. The Supreme Court of the state has declared such construction. In Vale v. Buchanan, 98 Ark. 299, at page 301, 135 S. W. 848, 849, the court said:

"The power and authority to issue county warrants is derived solely from the statute, and before such warrants can be received in payment of the taxes and debts due to the county they must conform to the provisions of the statute authorizing their issuance."

In Union County v. Smith, 34 Ark. 684, at page 686, the court said:

"It appears from the recitals of the judgment, that the county scrip of Union county was, at the time the expenses charged for in the account were incurred, not worth more than fifteen cents on the dollar in lawful money, and it is manifest from the face of the judgment, that the charges in some of the items of the account were greatly enhanced by the claimant, and allowed by the court, on account of the de-

preciation of the county scrip, which was forbidden by statute, and contrary to public policy. Gantt's Dig. § 602; Goyne v. Ashley County, 31 Ark. 552.

"It may have been difficult for the sheriff to procure guards, etc., and feed them at ordinary money charges, when the county, owing to its financial condition, could not meet its current expenses otherwise than by the issuance of depreciated scrip, but the enlargement of allowances on account of such depreciation enhances the evil, is a ruinous public policy and forbidden by law. All who serve the public must receive such compensation for their service as the law provides."

To the same effect is Goyne v. Ashley County, 31 Ark. 552. The Smith, Goyne and other cases (Barton v. Swepston, 44 Ark. 437; Chicot County v. Kruse, 47 Ark. 80, 14 S. W. 469) were based upon claims not requiring the contract to be publicly let to the lowest bidder. · In Watkins v. Stough, 103 Ark. 468, 147 S. W. 443, the state Supreme Court differentiated the above cases on the ground that they applied to contracts not required to be so let and stated the rule as to construction of this section when applied to contracts let to the lowest competitive bidder to be that recovery could not be denied where the lowest bidder had based his bid, in part, upon the depreciated value of county warrants so long as there was no fraud or collusion between bidders (based on that consideration). In that case there was evidence that the county judge, at the time of the bidding, had announced that warrants were worth 50 or 55 cents on the dollar, but he denied making any such statement and the Supreme Court did not consider any action of the county judge as affecting its conclusion. The heart of the holding is that the cash market price does not govern in competitive bidding, the court · (page 471 [147 S. W. 445]) saying:

"In other words, where a contract for constructing bridges or other work is required by law to be let to the lowest bidder, and is so let, then the contract price is the measure of the contractor's rights, and not the customary cash market price for the materials furnished or work done. And, unless fraud or collusion to increase the price by reason of payment in depreciated warrants be shown, the contractor is entitled to recover the amount of the contract price. If the successful bidder for the contract could only recover the cash market price of the material and work, then the legal requirement for letting the contract to the

lowest bidder would be useless. Under the statute, where the lowest bid is accepted and the contract is made pursuant thereto, the contract is mutual, to do the work on the one part and to pay the stipulated price on the other, and the contract can not be avoided except by proof of fraud or collusion."

The case of Stone v. Mayo, 135 Ark. 127, 204 S. W. 751, dealt with other facts and extended the rather narrow rule laid down in the Watkins Case. The bid there was as follows:

"T. A. Bettis, Commissioner: We propose to furnish all labor and material to build courthouse at Harrisburg, Arkansas, according to revised plans and specifications prepared by Mitchell Seligman, architect, for the sum of $91,000, payment to be made in courthouse warrants at 70.125 base."

As that case is cited as controlling here, it is well to have in mind the facts then before the court. After setting forth the low bid containing the above provision, the court continues as follows (page 128 [204 S. W. 751]):

"The other bids were in the same form. Appellants alleged that the language of the bid means that the contract price is $63,813.75. They alleged that the contract was void, and prayed that the appellees be restrained from paying out any more than $63,813.75, for the construction of the courthouse.

"The answer denied that the bid and contract contemplated that the construction of the courthouse was for $63,813.75, and alleged that the bid and contract contemplated construction of the courthouse for $91,000 in county warrants. They denied that the contract was void and admitted that unless restrained it would be carried out by the final payment of $91,000 upon the completion of the contract.

"The provision of the contract challenged here is as follows: 'The commissioner agrees to pay the contractor in county warrants of Poinsett county, Arkansas, for the full performance of the contract and its acceptance by the commissioner $91,816.91, subject to additions and deductions as provided for in the general conditions of the contract.'

"The contractor testified that he bid in the form set out above; that he was to receive $91,000 in county warrants under the terms of his bid. He expected to sell the warrants for 70⅛ per cent. The '70–125 base' meant the best price the bond buyers offered. There was no understanding or agreement with the county court about that. The court was to pay witness $91,000 without regard to the price witness might receive for the warrants whether 60, 75 or 100 cents on the dollar. Witness put the '70–125 base' in the bid more as a record of the proposition that witness had from the bond buyers. It was not a part of witness' dealing with county officials or the commissioners, and there was no such understanding or agreement with any one.

"The county judge testified that the contractor submitted a bid to construct the courthouse for $91,000 in county warrants and that the clause '70–125 base' was added. The bid was treated as one of $91,000 for the construction of the courthouse. Nothing was said about issuing warrants for only 70⅛ per cent. of $91,000. There were four bidders. The warrants were to be issued and delivered to the contractor. That is as far as witness had any understanding about it. Witness realized that the contractor had to sell them to get money, but witness had nothing to do with his contract of sale, except to refer him to certain people who might buy the warrants. The contractor to whom the bid was let was the lowest bidder. Each contractor examined all bids, discussed the matter freely and went away satisfied. The same clause (70–125 base) was in other bids.

"The undisputed evidence shows that $91,000 was a reasonable price to pay a contractor and the contract could not be let at the time of the institution of this suit for that price. It was shown that the bid was originally for $91,000, but before the contract was let was raised to $91,806.90, on account of certain changes in the plans that were agreed upon. This was the lowest bid, being $35,000 less than the highest bidder.

"The court found that the bid of the contractor for the construction of the courthouse contemplated the issuance of $91,000 in county warrants as the consideration for the contract and did not contemplate the issuance of 70⅛ per cent. of $91,000 or $63,813.75 only.

"The court further found that the bid of the contractor was submitted in open competition, and that four contractors bid for such construction and that the bid of the contractor, to whom the contract was let, was the lowest and best bid; and that no bidder nor any officer were misled in any way by the terms of said bid."

The opinion of the court is as follows (page 130 [204 S. W. 752]):

"In Watkins v. Stough, 103 Ark. 468, 471 [147 S. W. 443] there was a contract let for the construction of certain bridges to the lowest bidder at public outcry. The facts are very similar to the case at bar. There was testimony tending to show that when the contract was offered at public outcry the county judge made a public announcement that county warrants could be cashed at 50–55 cents on the dollar. The contract was let for the construction of the bridge at $3.40 per linear foot. The contract was attacked on the ground that the bid for the work was based on depreciated county scrip and that a fair cash price for construction of the bridges would have been $2 per linear foot. In that case the trial court found that the contractor used no fraud or deception in procuring the contract and was the lowest bidder for the contract. In that case we said: 'When a contract, free from fraud or collusion, is entered into pursuant to the terms of the statute for the construction of a bridge, and the work is done according to the contract, the stipulated price becomes a valid claim against the county, payable, as are other claims, in warrants on the treasury. If the contract does not disclose on its face an illegal agreement for an increase of price on account of payment in depreciated warrants, or unless the proof establishes collusion to increase the bids on account of payment in depreciated warrants, then the reasons for the successful bidder fixing the amount of his bid cannot be inquired into for the purpose of avoiding the contract.'

"That case controls this. Here was a straight contract for the construction of the courthouse for $91,806.90. There was no evidence of any collusion among the bidders to perpetrate a fraud on the court to have the contract let at a higher price because of the depreciated value of the county warrants, nor is there any testimony to warrant the conclusion that the county court entered into a collusion with the contractor to give him the contract at an increased price because the value of the county scrip was less than par. The fact that the bidders made inquiry and ascertained that the value of the county warrants was less than par and made their bid with such knowledge does not establish that there was a collusion between them to stifle the bidding and to defraud the court by securing a contract at a higher price on account of the depreciated value of the county warrants. There is no allegation that the county court, or its commissioner, or the bidder, in se-curing the contract, were guilty of any fraud.

"The complaint sets out the bid which, strictly construed, on its face calls for the payment of $91,000 in county warrants at '70–125 base,' which would necessitate the issuance of county warrants to the amount of about $118,000. If the contract had been expressed in these terms there would be grounds for saying that upon its face it was a fraud upon the court, but as already stated the contract calls for the payment of $91,000 in county warrants without any increase of the contract price on account of the warrants being below par. The decree is, therefore, correct and is affirmed."

[3] The gist of that decision on those facts is that although the county court may know that the bid price is based on the depreciated value of warrants and such fact appears in the bid itself which calls for payment in county warrants, yet, if there is no "collusion among the bidders to perpetrate a fraud on the court to have the contract let at a higher price because of the depreciated value of the county warrants" and no collusion between the county court and the contractor "to give him the contract at an increased price because the value of the county scrip was less than par," then the contract and the warrants delivered thereunder are valid. This decision holds that the county court may issue warrants on less than a cash par value basis even when the very bid before it states that fact and the court is fully advised thereof. However, this is the construction of this state statute by the highest court of the state. It is binding upon us. It relates to a very important function of a subordinate governmental unit of the state and there should not be two rules in respect to such matters. In such class of subjects, harmony is more important than legal accuracy.

[4, 5] We think that case rules the one before us. It is true that there was there no allegation of fraud or collusion by the commissioners or by the county court while such allegations are here as to both. But the proof here goes no further than in that case and allegations sink from judicial sight unless supported by evidence. The proof here is that the bid (contract) itself made no reference to any depreciated value in the warrants but that the commissioners and the court clearly understood that the contractor was estimating the warrants as worth 60 cents on the dollar and that his bid price (payable in warrants) was so based.. With this knowledge, the commissioners accepted

the bid and the court approved it. This is exactly what occurred in the Stone Case. The only difference is that in that case the information was on the face of the bid while here it appeared first in the report of the commissioners. This difference seems immaterial. If it is material, the Stone Case is stronger than this one for there it was in the very bid itself. In this case, as in that, the court acted knowingly but independently and that case held such action valid as not being fraud or collusion.

We think the judgments must be affirmed with the clear statement that they are, as to payment, to be treated merely as warrants issued in accordance with the statutes and with no greater rights because they are established herein as to amount and other features.

It is so ordered.