## COLE VS. WHITE COUNTY.

1. **APPEAL:** *By County, etc.*

   Prior to the adoption of the Constitution of 1874, an appeal was not authorized by or on behalf of a county, from an order or judgment of the County Court, allowing a claim against the county.

2. **FEES FOR OFFICIAL SERVICE:**

   Where the compensation of an officer is regulated by fees, he can only demand such as are authorized by law, he cannot charge for a particular service, for which no special fee is provided, unless there is a general provision of law covering all services not specially provided for; such a general provision would not embrace services for the State or a county, unless they are expressly named, or necessarily implied.

Cole vs. White County.

3. STATUTES: *When the State or County is affected by.*

A general statute, declaring or affecting rights and interests, does not include the State, unless it be included expressly or by necessary implication; and counties being but political sub-divisions of the State are within the same rule.

4. COUNTY CLERK'S FEES:

The fee of 10 cents, allowed in the table of fees of the clerk, for filing every paper not therein specified, relates to personal matters of individuals, and not of the county. Such services as are incidentally rendered the county in discharge of the officer's general duties, is contemplated in the compensation allowed him for such public services as are paid for, and the fees paid by individuals.

5. *Same.*

The *per diem* allowed the County Clerk as a member of the Board of Equalization, is intended as compensation for all service rendered the county in that capacity.

6. *Same.*

The law did not require the County Clerk to issue the summonses for grand and petit jurors and justices of the peace, to attend the County Court, nor to furnish the Auditor a copy of the delinquent list or record the same, and he was not entitled to compensation for such service.

7. *Allowances to County Clerk for expenses of his office.*

It is the duty of the sheriff to furnish fuel for the county, and the County Clerk is not entitled to an allowance for fuel for his office. He is entitled to an allowance for postage stamps, as stationery.

8. APPEAL: W*hen error will not be corrected in.*

A valid item in a claim presented by a County Clerk, was rejected by the court below, from which he appealed. It appearing that a larger item in the same claim was improperly allowed, the ruling will not be reversed.

APPEAL from the Circuit Court of *White* County.

Hon. JOHN WHYTOCK, Circuit Judge.

*Kimball,* for appellant.

*Coody, contra.*

HARRISON, J.:

The appellant, John A. Cole, presented to the County Court of White County, for allowance, nine several claims for services and expenditures by him as clerk of said county, as follows:

Cole vs. White County

## CLAIM ONE.

For furnishing county assessor abstract of real
estate in the assessment of 1872...............$100 00
For keeping abstracts of county warrants issued, 100 00
For services rendered in keeping county audit
four years and six months......................... 250 00
For filing 835 county warrants..................... 83 50

$533 50

## CLAIM TWO.

For 1911 indexings to records of deeds, J., ten
cents each........................................$191 10

## CLAIM THREE.

For filing 302 county warrants at ten cents
each..............................................$ 30 20

## CLAIM FOUR.

For entering 1537 orders of County Board of
Equalization, twenty-five cents.................$384 00
For indexing same, ten cents each............... 153 70
For 4200 filings of schedules of personal assess-
ments 1872, ten cents each....................... 420 00
For sixteen summons for grand jurors........... 16 00
For sixteen copies of same........................ 4 00
For six summons alternate grand jurors......... 6 00
For six copies of same, twenty-five cents each, 1 50
For twenty-four summons petit jurors........... 24 00
For six summons for alternates.................... 6 00
For copies of summons for petit jurors.......... 7 50

$1022 70

## CLAIM FIVE.

To summoning nineteen justices of the peace
to organize County Court—January, 1871...$ 9 00

### CLAIM SIX.

For copy of Delinquent List of Real Estate to
Auditor for 1870-71, at ten cents per tract...$  65  60
For a copy of Delinquent List of Real Estate,
1870-71, entered on record at ten cents per
tract.................................................  65  60
For fifteen days services making settlement
with collector of taxes, 1871.................... 100  00
                                                    ─────────
                                              $231  20

### CLAIM SEVEN.

For amount paid for cutting wood for office...$   1  65
For amount paid for postage stamps.............   3  30
For amount paid for same.......................   4  95
For filing and canceling 668 county warrants..  66  80
For qualifying fourteen school trustees........   3  50
For twenty-two filings, reports and oaths of
office of county school trustees.................   2  20
For two loads wood for office.....................   4  40
For five loads of same............................  11  00
For postage stamps for office......................   4  90
For fifty-two orders—Circuit Court Criminal
Record, April Term, 1869, twenty-five cents
each.................................................  13  00
For thirty-five opening and closing and other
orders on Circuit Court Equity Record, April,
1869, fifty cents each.............................  17  50
For thirty orders on Common Law Record
Circuit Court, November Term, 1869,
twenty-five cents each............................   7  50
For twenty three Circuit Court Equity Record
from April 8th, 1868, to January 20th, 1869,
fifty cents each....................................  11  50
For 106 opening and closing orders on Probate
Court Record, from January 10th, 1868, to
January 31st, 1869, fifteen cents each.........  15  90
                                                    ─────────
                                              $168  10

### CLAIM EIGHT.

For 1648 indexings to Marriage Record, ten
  cents each................................................$160 80
For 1648 reversed indexings to same............ 160 80
Making general index of official bonds......... 20 00

                                          $341 60
### CLAIM NINE.

This claim consists of more than a hundred items, amounting
in the aggregate to $2,164.72, but is credited, thus: "By
allowances on general account made at former terms, $1350."
Balance claimed, $814.72. From the view we take of it, herein-
after stated, it is unnecessary to set it out more particularly.

The court allowed the whole of claims, one, two, eight and
nine; the third item, and thirteen dollars of each of the other
charges in claim six; the first to the third, and the fifth to the
thirteenth items inclusive, and rejected all the others of claim
seven; allowed $180 for the first and second items, and the third
entirely of claim eight; and refused to allow, either in whole
or in part, claims three, four and five. Although the court
allowed the whole of nine, it ordered that no warrant should be
issued until Cole should pay into the county treasury $1878.79,
that he had drawn for the county from the State Treasury, and
retained in his hands.

Cole appealed to the Circuit Court in the cases of claims three,
four, five, six, seven and also nine; and it appears the county,
by her attorney, in the cases of claims one, two and eight.

In the Circuit Court the cases were severally tried by the
court sitting as a jury—and in claim one, Cole recovered 10
cents, only,—for filing the county warrants; on claim two, $48;
on claim three, 10 cents; on claim four, $6, for summonses for
alternate grand jury; on claim six, $26.10—$26 for the first two
items, and 10 cents for the third; on seven, $66.65, for wood
furnished the office, cutting the same, and for the orders on the
several courts' records, except the Probate, as charged; and on

4

eight, $200--$180 for the indexes to the Marriage Record, and $20, as charged, for the index to the record of official bonds. In the cases of claims five and nine, the judgments were for the county.

Cole appealed in all cases to this court.

The cases were determined in the County Court, and the appeal taken to the Circuit Court before the adoption of the present Constitution; until which time the law made no provision for an appeal, by or in behalf of the county, from an order or judgment of the County Court, allowing a claim against the county. *Chicot County* v. *Tilghman*, 26 Ark., 461; *Austin* v. *Crawford County*, 30 Ark., 578. The Circuit Court, therefore, acquired no jurisdiction in the cases of claims one, two and eight, by the appeals attempted in behalf of the county by her attorney, and those cases are not properly before us for review.

All the cases having been submitted as one, we will consider the others together.

It is an established rule of law, that where the compensation of an officer is regulated by fees, he can only demand such fees as are fixed and authorized for the performance of his official duties, and he cannot charge for a particular service for which no special fee is given, unless its payment is allowed by some general provision, like that of sec. 2894, Gantt's Digest, that in all cases where any officer or other person is required to perform any duty for which no fees are allowed by any law, he shall be entitled to receive such pay as would be allowed for similar services. *Crittenden County* v. *Crump*, 25 Ark., 235; *Debott* v. *Trustees, etc.*, 7 Ohio St., 237; *Baker* v. *Utica*, 19 N. Y., 326; *Bicknell* v. *Amador County*, 30 Cal., 237; *Town of Carlyle* v. *Sharp*, 51 Ill., 71; *Rawley* v. *Commissioners of Vego County*, 2 Blackf., 355.

Such general provision, however, does not embrace services required to be performed for the State or county; for it is also another well settled rule, that in the construction of statutes declaring or affecting rights and interests, general words do not include the State or affect its rights, unless it be especially named, or it be clear by necessary implication, that the State was intended to be included. Sedg. on Con. and Stat. Law, 337; 1 Black. Com., 261; 1 Kent Com., 460; *Josselyh* v. *Stone*, 28 Miss. 753; *United States* v. *Hoar*, 2 Mason, 311; *People* v. *Rossiter*, 4 Con., 143.

Counties are civil divisions of the State for political and and judicial purposes, and are its auxiliaries and instrumentalities in the administration of its government. 1 Black Com., 113; 2 Kent. Com., 274; *Boone County* v. *Keck*, 31 Ark., 387; *United States* v. *Railroad Company*, 17 Wall., 322; *Ward* v. *County of Hartford*, 12 Cown., 404; *Commissioners of Hamilton County* v *Mighels*, 7 Ohio St., 109; *Granger and Wife* v. *Pulaski County*, 26 Ark., 37; *English* v. *Oliver*, 28 Ark., 317; *Knowlton* v. *Supervisors of Rock County*, 9 Wis., 410; *Burnham* v. *City of Fond du Lac.*, 15 Wis., 193; *Hawthorne* v. *City of St. Louis*, 11 Mo., 59; *Mayor of Mobile* v. *Rowland & Co.*, 26 Ala., 498; *Erie* v. *Knapp*, 29 Penn. St., 173; *Baltimore* v. *Root*, 8 Md., 94.

The Supreme Court of the United States in the case of *United States* v. *Railroad Company*, says: " A municipal corporation like the City of Baltimore is a representative, not only of the State, but is a portion of its governmental power. It is one of its creatures made for a specific purpose to exercise within a limited sphere, the powers of the State."

In the case of *Commissioners of Hamilton County* v. *Mighels*, the Supreme Court of Ohio, say: " A county organization, is created almost exclusively with a view to the policy of the State

at large, for purposes of political organization and civil administration, in matters of finance, of education, of provision for the poor, of military organization, of the means of travel and transport, and especially for the general administration of justice. With scarcely an exception, all the powers and functions of the county organization have a direct and exclusive reference to the general policy of the State, and are in fact, but a branch of the general administration of that policy." And this court in *Granger and Wife* v. *Pulaski County*, say : " Counties are political divisions of the State government, organized as a part and parcel of its machinery, * * * Their functions are wholly of a public nature, and this creates a matter of public convenience and governmental necessity."

It follows then, that counties which are component and essential parts of the State, and the necessary agencies of its government, embodiments of the public, are no more embraced in the general words of the statute, than the State itself.

No question like the one before the court can hereafter arise, as sec. 604, Gantt's Digest expressly prohibits the County Court from " auditing and allowing to any officer any fee or allowance, not specially allowed such officer by law; " but the services for which compensation is here claimed, were all performed before that prohibition was enacted.

In the table of fees of the clerk, especially as clerk of the County Court, he is allowed 10 cents for filing every paper not therein specified. Sec. 2839, Gantt's Digest. The papers there meant, are such as relate to the personal matters of individuals, who must pay for filing them. And this remark disposes of the charges in claims three, four and seven, for filing canceled warrants, schedules and personal assessments—and reports and oaths of county school trustees.

The orders on the several county records, charged for in claim seven, were, it seems, such as were incidental to the business of courts, and requisite to a complete history and record of their proceedings, and not separable to any particular action or proceeding. The remuneration for such services as are incidentally rendered the county in the discharge of the officer's general duties, for which no fee is allowed, is had in the compensation he receives for such public services as are specially paid for, and in the fees paid by individuals in their personal matters, which the legislature has intended to be sufficiently liberal to be an equivalent for all the duties required of him. *Irwin* v. *Commissioners, etc.,* 1 Serg. & Rawle, 505; *Tarpen* v. *Board of Commissioners,* 7 Ind., 172.

The charges in claim four, for entering and indexing the orders of the County Board of Equalization, have not even such semblance of right as for services for which compensation has not been specially provided. The clerk was a member of the board and its clerk, and received $5 per day for the time he served as such. Revenue act of March 25, 1871, sec. 187.

No such service as issuing summons for grand and petit jurors and their alternates was required of the clerk. He was required only to furnish the sheriff with copies of the lists of the jurors and their alternates, that had been selected, and he summoned them without other process. Gantt's Digest, secs. 3677, 3678.

A similar unauthorized and idle act, was the issuing of summonses for the justices of the peace to attend and hold the County Court, charged for in claim five. The law fixes the times at which the County Court is to be held, of which the justices take notice and attend, without being summoned or called together by the clerk. Nor did the law require him to furnish the Auditor a copy of the Delinquent List of Real Estate, or to record the same. The revenue act of March 25th, 1871, sec.

104, required him to record the sales of lands for taxes, and to forward to the auditor by the collector, at the time he made his annual settlement, a certified copy of the list of lands sold to the State, and upon which no taxes had been collected. See sec. 5192, Gantt's Digest.

According to sec. 184, of the Revenue Act of 1871, the clerk was entitled to $5 for each day he was employed in making settlement with the collector. Cole swears he was engaged fifteen days, which was all the evidence as to the time he was employed. The court below allowed him only 10 cents, for his settlement with the collector, and $26.10 on claim six, where he should have been allowed $75, for making settlement with the collector; but nothing for furnishing the auditor with the Delinquent List of Real Estate, and recording the same.

The clerk is doubtless entitled to a fee for adminstering the oath of office to a school trustee, but the trustee, and not the county should pay it.

It is the duty of the sheriff to furnish fuel for the courts, and of the clerk, all blank-books and stationery—the accounts for which must be audited and adjusted by the court for which the same is furnished, secs. 1172, 1173, Gantt's Digest. Cole was not, therefore, entitled to charge the county for wood, and cutting the same for his office. Though it may have been used, when no court was in session, yet it was the duty of the sheriff to furnish it for the office, and have the account for it audited and allowed by the County Court. Postage stamps are often necessary in the discharge of the duties of the clerk's office, and may properly be considered as stationery, and Cole swears he used the amount charged in the business of his office, and the County Court allowed therefor. We think it a valid charge against the county; yet, as we have seen, the appellant was allowed charges not legally such against the county in the same claim, exceeding

in amount what he was entitled to for the postage stamps.   The
error in the judgment, in the case of claim seven, is not one of
which he may complain.

Although the County Court allowed the whole of claim nine,
and the sole ground of Cole's appeal to the Circuit Court, evi-
dently, was the order, withholding the warrant until he paid into
the county treasury, the moneys of the county in his hands, the
case stood in that court for trial *de novo*.

The form in which the claim was before the County Court,
and went into the Circuit Court, would seem to show, that the
balance stated $814.72, was the matter in controversy, rather
than the particular charges; and the finding of the court being
general, without any reference to particular items, leads to the
conclusion, that on the trial, it considered the $1350, previously
allowed by the County Court, covered the full amount due on
the account.   There was nothing in the case to show which par-
ticular items, the allowance of the $1350 was intended to apply,
nor in the finding of the court, what items it considered were
improperly charged, to make up the balance of $814.72.   The
only evidence in the case was the deposition of Cole,—that
he rendered the services charged for; and that the claim was
correct and justly due.

In looking into the claim, we find, that most of the charges
are for such services as those we have shown, the law allows no
fees for, and costs in State cases, which did not appear to have
been adjusted and certified by the Circuit Court, as required by
sec. 2017, Gantt's Digest; and there was the erroneous charge of
$1000, for making out the tax books of real and personal pro-
perty, in 1872.   The Circuit Court did not err in its finding and
judgment in this case.

The judgment of the court below, in each of the cases of claims
three, four, five, seven and nine, is affirmed, its judgment in the

case of claim six, for the error we have indicated is reversed and the cause remanded for a new trial; and its judgment in each of the cases of claims one, two and eight, is reversed, and the causes are remanded, with instructions to dismiss the appeals.