Ivy v. Edwards.

Opinion delivered October 17, 1927.

1. Counties—levy of tax to pay for courthouse.—An order of the quorum court levying a tax to pay installments on warrants issued for constructing a courthouse was not invalid under Amend. 11 to the Constitution, where it affirmatively appeared that, after paying the necessary expenses for the county, there will be ample revenue each year to pay installments due on the contract for the courthouse.

2. COUNTIES—VALIDITY OF APPROPRIATION FOR COURTHOUSE.—An order of the quorum court levying a tax to pay installments on warrants issued for courthouse, the legal effect of which was to appropriate the maximum amount to build the courthouse, payable in installments, and not merely an attempt to make specific levies for future years, *held* not invalid for failure to specifically state that the maximum sum is appropriated to pay for a courthouse.

3. COUNTIES—CONSTRUCTION OF COURTHOUSE—PAYMENT IN INSTALL-MENTS.—The quorum court is authorized to contract for the construction of a courthouse in an amount not to exceed $200,000, and to appropriate such amount payable in 20 annual installments by a one-mill levy on assessed valuation of property in the county, though the levy would have to be made and enforced annually.

4. COUNTIES—VALIDITY OF ORDER PROVIDING ANNUAL LEVIES.—An order of the quorum court providing for appropriation for the construction of a courthouse, payable in annual installments by an annual levy on county property, was not invalid because future quorum courts could not be bound by any specific appropriations provided for by a prior court, where a reasonable estimate disclosed that there would be sufficient funds left after paying necessary expenses to build the courthouse on installment plan.

5. COUNTIES—CONSTRUCTION OF COURTHOUSE—AUTHORITY OF QUORUM COURT.—In the construction of a county courthouse, the extent of power of the quorum court is to determine whether the courthouse shall be built, the cost thereof and the manner of payment, and thereafter the courthouse is to be constructed under the orders of the county court, without the necessity of the quorum court directing the county court to proceed and let the contract for the courthouse.

6. COUNTIES—ISSUANCE OF NONINTEREST-BEARING WARRANTS.—The contract for the construction of a courthouse, made under the order of the quorum court, appropriating the total sum to be paid in annual installments, *held* not invalid because of proposed issuance of noninterest-bearing warrants, when the courthouse has been accepted, instead of issuing annually the amount of installment due for the current year.

7. COUNTIES—WHEN NONINTEREST-BEARING WARRANTS MAY BE ISSUED. —Noninterest-bearing warrants may be issued as evidence of indebtedness existing under the contract for the construction of the county courthouse, to cover the work as it progresses and the balance when the courthouse is completed according to the plans and specifications.

8. COUNTIES—APPROPRIATION FOR COURTHOUSE—GENERAL COUNTY
   FUND.—Where the quorum court appropriated a maximum sum
   for building a courthouse, requiring the 1-mill levy to be paid
   out of the levy of 5 mills and by levies to be paid each year
   covering all expenses of government, and not in excess of 5-mill
   levy, there was no continuing levy of 1 mill annually for court-
   house construction, and warrants should not be drawn on a spe-
   cific fund, but on the general county fund out of which the
   appropriation was made.

9. COUNTIES—CONSTRUCTION OF COURTHOUSE—PRIORITY OF WARRANTS.
   —Warrants issued as evidence of the indebtedness for county
   courthouse to be paid out of the general county fund, should not
   contain a provision that they shall take precedence over other
   warrants, issued against the general fund for the current year,
   since the necessary expenses of government as well as court-
   house warrants are binding obligations, and must be paid.

10. COUNTIES—AUTHORITY OF QUORUM COURT.—Under Crawford &
    Moses' Dig., §§ 1933-1935 and Acts 1917, p. 1184, as amended by
    Acts 1919, pp. 144, 394, the county court is authorized to select
    and purchase a site for courthouse if necessary, and the quorum
    court is only authorized to determine when the courthouse shall
    be built, the amount of expenditure and the manner of payment.

11. COUNTIES—SALE OF OLD COURTHOUSE.—The county court is
    empowered to sell the old site of the county courthouse after
    a new site has been acquired.

Appeal from Benton Chancery Court; *Lee Seamster,*
Chancellor; affirmed.

*Jeff R. Rice,* for appellant.

*L. H. McGill,* for appellee.

HUMPHREYS, J. This suit was brought in the chan-
cery court of Benton County by appellant, a resident
citizen and real estate property owner in said county, to
enjoin W. R. Edwards, county judge of said county,
and his successors, and appellees Joe Beasley, W. E.
Patton and Kit Phillips, as commissioners of public
buildings in said county, and their successors, from mak-
ing any contract or taking any further steps toward
carrying out the resolutions of the quorum court to build
a new courthouse. The questions necessary to a deter-
mination of the issues involved on this appeal are, in
substance, as follows:

1. The quorum court, at its regular term in October, 1926, made separate specific levies in mills for six county purposes, aggregating 3⅜ mills, and a levy of 1⅝ mills for general county purposes.

2. A motion was then passed directing the county judge and a committee, to be appointed by him from members of the quorum court, to make investigation of the question of remodeling the present courthouse or building a new one, and to report to the quorum court at an adjourned term to be held.

3. This committee was appointed by the county judge, and made the investigation and filed its report at said adjourned term. The report, in substance, stated that the courthouse was in such bad condition that it could not be remodeled; that it was necessary to build a new courthouse; that a new courthouse, fire-proof and modern and of sufficient size and capacity to meet the needs of the county for a great many years, could be built for approximately $200,000, and that such an amount could be appropriated and paid out of the five-mill levies for general county purposes, leaving sufficient revenue to take care of the general county expenses, and that the county would get out of debt from the levies already made for the fiscal year 1927. The committee recommended that a new courthouse be built.

4. The quorum court at such adjourned term, Dec. 1, 1926, took up for consideration and action the matter of making an appropriation and levy for the building of a new courthouse, to be paid for out of successive levies to be made in the year 1927 and the following years, and authorized the building of a new courthouse, and adopted the following resolution and order: "Whereas, the quorum court has under consideration the necessity of building a courthouse for Benton County and the issuance of not exceeding $200,000 of noninterest-bearing warrants of the county for said purposes; and whereas, it is deemed to be to the best interests of the county that provision be made for the issuance of said warrants by the levying of a tax to pay them as they mature; and

whereas, it has been calculated that the amount of money necessary to pay said warrants as they mature in twenty installments of $10,000 each will be realized by levying a tax of one mill; be it ordered, adjudged and decreed by the quorum court of Benton County, Arkansas: That a tax of one mill on the dollar of the assessed value of all taxable property within the said county is hereby levied to pay the installments of said warrants, in the total amount of not exceeding $200,000, maturing serially $10,000 per year for twenty years, beginning in the year 1928; that, during each of the years while any of said warrants are outstanding and unpaid thereon, there shall be calculated the amount of money necessary during each of said years to pay the current installment maturing during said years, and a tax at a rate sufficient to raise said sum of money shall be levied by the quorum court, and shall be assessed and collected during each of said years, and is hereby ordered levied, and is levied in so far as this court is authorized to do so, and said money, when collected, shall be used for the purpose named and for no other purpose; and the full faith and credit of Benton County is hereby pledged for the payment of the same in the several amounts and in the successive years above stated."

5. Thereafter the following proceedings were had and done in the county court:

(a). A finding and adjudication that the present courthouse is old and dilapidated and dangerous, and does not afford sufficient room and conveniences for the transaction of the orderly business of the county; that it is necessary and expedient to build a new courthouse as provided for in the resolution and order of the quorum court, and ordered that a new courthouse be built, and appointed Joe Beasley, W. E. Patton and Kit Phillips as building commissioners, and directed them to determine whether it was necessary to select and purchase ground as a site therefor, and, if found necessary, to select and purchase such site and make a report to the court, and, after such purchase should be approved, to proceed with

the building of the courthouse. (b). The commissioners reported to the court that they had determined that it was necessary to procure a new site and that they had selected and purchased such a site, located on the east side of the public square at Bentonville. (c). The county court approved and confirmed the findings of the commissioners and ratified and approved their selection and purchase of a new site. (d). The commissioners also employed A. O. Clarke as architect and made a contract with him, and his selection and the contract made with him were approved by the county court. The architect submitted plans and specifications for the building of the courthouse, which were approved by the commissioners and the county court, and the commissioners were ordered to proceed to let a contract for the building as provided by law.

(6). The report made by the committee to the adjourned term of the quorum court, which is an exhibit to the complaint, shows that they held a number of meetings and had before them a number of architects, who examined the present courthouse, and who submitted proposed plans for a new courthouse and estimated costs, and one submitted a plan of remodeling the old courthouse, with estimated cost thereof, and all were of the opinion that it was not practicable or advisable to attempt to remodel the old courthouse. The court details the reasons on which the opinions are based, also details of proposed plans for a new courthouse.

The report of the building commissioners on the question of selecting a new site, which is also made an exhibit to the complaint, also goes into details as to the reasons therefor.

Appellees filed a demurrer to the complaint, which was sustained over the objection and exception of appellant, and, upon his election to stand upon the complaint without amendment, same was dismissed for want of equity, from which is this appeal.

The validity of the order of the quorum court is first assailed upon the ground that said court had no

right to appropriate any revenue except that of the current year to build the courthouse. This court ruled, in the case of *Kirk* v. *High*, 169 Ark. 152, 273 S. W. 389, 41 A. L. R. 782, that Amendment No. 11 to the Constitution did not inhibit a county from building a courthouse because it could not be fully paid for in one year, but that it might contract for the construction of a courthouse and appropriate the payment of the cost over a number of years; however, in doing so the other necessary expenses of government must be taken into account, so that the annual payment, together with the other necessary expenses of government, should not exceed the revenues for the current or any succeeding year. It affirmatively appears from the complaint that, after paying the necessary expenses of government, there would be ample revenue each year derived from the five-mill levy permitted by the Constitution to pay the annual installment to become due upon the proposed contract for the construction of the courthouse.

The validity of the order of the quorum court is next assailed because it does not say, in so many words, "that the sum of $200,000 is hereby appropriated to pay for the building of a new courthouse in Benton County."

We think that, when the entire resolution of the quorum court is read, the legal effect of the language used was to appropriate not to exceed $200,000 to build the courthouse, to be paid in twenty annual installments of $10,000 each, the payment to begin in 1928. It was clearly the intent, from the language used, to appropriate $200,000 for that purpose, and not merely an attempt to make specific levies for future years.

The validity of the order of the quorum court is next assailed because the court was without power to make a specific levy of one mill extending over succeeding years, beginning with a levy of that amount in 1927. What the quorum court really did was to authorize the construction of a courthouse, not to exceed $200,000, and to appropriate that amount for the purpose, payable in twenty annual installments, and estimated that a one-

mill levy upon the assessed valuation of the property in the county would raise a sufficient sum to meet the annual payments. The quorum court had the power to authorize the contract and make the appropriation. Of course the levy will have to be made annually, but, being a binding contractual obligation upon the county, the levy will have to be made each year, and may be enforced. This court said, in the case of *Hilliard* v. *Bunker*, 68 Ark. 340, 58 S. W. 362:

"In such an expensive matter as the building of a courthouse and jail it is not, of course, expected, under ordinary circumstances, to cover the whole amount of the levy for one year, and in fact this cannot be done, since, together with the ordinary expenses of the county, the levy for erecting these buildings must not exceed in one year the rate of five mills. The amount and number of the annual installments necessary to cover the whole cost of the structure must be and is left to the discretion of the levying court, to be exercised so as to accomplish the result intended in a reasonable time."

This doctrine was affirmed in the case of *Shofner* v. *Dowell*, 168 Ark. 229, 269 S. W. 588, 987.

The validity of the order of the quorum court is next assailed because future quorum courts could not be bound by any specific appropriation provided for by the court of 1926, as the latter court could not see far enough in the future to tell whether there would be enough revenue in any particular year to take care of the necessary current expenses of the county, after paying the courthouse warrants. This was a question which must be determined and was determined in the instant case, according to the allegations of the complaint, before the contract was authorized. It was estimated that a four-mill levy on the assessed valuation of the property in the county would raise $40,000 and would be ample to take care of the necessary expenses of government, and that a one-mill levy for courthouse purposes would raise $10,000, which would be ample to take care of the annual installment which would fall due under the contract for

the construction of the courthouse. It would be impossible to build a courthouse if speculation and conjecture merely should be allowed to enter in making the estimates as to the amounts necessary to pay the necessary government expenses. In other words, a mere suggestion that it might take all of the revenue in any current year, to pay the necessary government expenses should not preclude the quorum court from authorizing the construction of the courthouse, if a sane and reasonable estimate disclosed that there would be sufficient left to build a courthouse on the installment plan, after paying the necessary expenses of government.

The validity of the order of the quorum court is next assailed because the court made no special order directing the county court and commissioners to make a contract to build a courthouse. It is not necessary, in order to build a courthouse, for a quorum court to direct the county court to proceed and let a contract to build a courthouse. The extent of the power of the quorum court is to determine whether a courthouse shall be built, the cost thereof, and manner of payment. After this has been done the courthouse is to be constructed under the orders of the county court. *Lawrence* v. *Coffman*, 36 Ark. 641.

It is also contended by appellant that, if the order of the quorum court is valid, the contract proposed to be made by appellees would be invalid, because it is proposed to deliver and issue all of the warrants when the courthouse has been accepted, instead of issuing annually the amount of the installment due for the current year.

The warrants do not bear interest, so the time of issuance places no additional burden upon the county. They are simply the evidence of an indebtedness which will exist under the contract, whether the warrants are issued or not. There is no constitutional or statutory provision inhibiting the issuance of noninterest bearing warrants as evidence of the indebtedness, or against all of them being issued when the courthouse is completed. The most common and practical method for handling

transactions of this character is to issue warrants for the contract price, if the county is without cash to meet the obligation. We see no objection to issuing warrants to cover the work as it progresses and to issue and deliver the balance of them when the courthouse is completed according to plans and specifications. *Shoffner* v. *Dowell, supra.*

It is also insisted that the warrants would not be valid if made payable out of a specific levy or fund, because the quorum court can only make an appropriation out of a general levy for the current year, and because the quorum court provides that the warrants shall be paid out of a specific fund arising out of a specific levy.

We understand that the order of the quorum court was an appropriation of $200,000 to be paid out of a levy of five mills in 1926 and by levies which are to be made each successive year to cover all of the expenses of government and not in excess of a five-mill levy. In other words, there was not a continuing levy of one mill annually for courthouse construction. The warrants should not, in that view, be drawn upon a specific fund, but should be drawn on the general county fund out of which the appropriation was made.

It is also insisted that the warrants will be void if the contemplated provision is inserted therein that they shall take precedence over other warrants issued against the general county fund for the current year. No such provision should be inserted in the warrants, as the necessary expenses of government, as well as these warrants, are binding obligations, and must be paid.

Lastly, it is insisted that the quorum court should have determined whether the new site should be acquired, and that no new site can be purchased if the county already owns a site, although the old courthouse would have to be removed. Sections 1933-5 of Crawford & Moses' Digest authorize the county court to select and purchase a site for the courthouse, if necessary, and the

only power vested by act of 1917 in the quorum court is the matter of determining when a courthouse shall be built, the amount of the expenditure therefor, and the manner of payment. *Thompson* v. *Mayo,* 135 Ark. 143, 204 S. W. 747.

There can be no question about the power of the county court to sell the old site after the new site has been acquired. *State* v. *Baxter,* 50 Ark. 447, 8 S. W. 188; *Little Rock Chamber of Commerce* v. *Pulaski County,* 113 Ark. 439, 168 S. W. 848.

No error appearing, the decree is affirmed.