## LAKE v. TATUM.

## HARRELL v. TATUM.

## Opinion delivered October 24, 1927.

1. COUNTIES—CIVIL DIVISIONS OF STATE.—Under the Constitution, counties are civil divisions of the State for political and judicial purposes, and are its auxiliaries and instrumentalities in the administration of its government.

2. COUNTIES—LIMIT OF DEBT.—Under Amendment 11 to the Constitution, the limitation placed upon the counties and the agents thereof in fiscal affairs is that the counties must live within their annual income, derived from the maximum constitutional tax levy, so that the limit of the amount for which a county may contract in any one year is the difference between the necessary governmental expenses, or fixed charges in running its government, and the total revenue which can be derived from levying and collecting county taxes in such year.

3. COUNTIES—POWER TO CONTRACT FOR COURTHOUSE.—Where the county court in good faith finds upon investigation of the fiscal affairs of the county that there will be a margin left, if it be spread over a series of years, sufficient to meet the annual payments for the construction of a courthouse, such a contract for the construction of a courthouse will be a valid and enforceable contract, and the annual payments will be considered as appropriated to the construction of the courthouse.

4. COUNTIES—WARRANTS FOR ERECTION OF COURTHOUSE.—Under Crawford & Moses' Dig., §§ 1986, 1987, 1989, warrants issued for the building of a county courthouse should state on their face the purpose for which they are issued.

5. COUNTIES—EFFECT OF APPROPRIATION FOR COURTHOUSE.—The contract for the erection of a courthouse sets apart a certain amount of the general revenue for such purpose, and the amount so segregated must be used for the courthouse construction, and an attempted diversion thereof by the county officers may be stopped by the holders of such warrants.

6. COUNTIES—BURDEN OF PROVING SUFFICIENCY OF COUNTY REVENUE.—In a proceeding to construct a courthouse the county court must ascertain from the budget of past years and from estimates of future conditions of the county, that there will be an annual margin left to meet the annual payments for construction after the necessary government expenses are deducted from the total annual county revenue, and the burden of proving the existence of such margin is upon the county officers sought to be enjoined from proceeding with the construction.

7. COUNTIES—CONTRACT FOR COURTHOUSE—VALIDITY.—In proceedings to enjoin the county officers from proceeding with the construction of courthouse, evidence showing that the county had enough funds on hand available to make the first payment on the courthouse, after deducting county government expenses, and that sufficient funds would be left over in each succeeding year to pay the installments due on the courthouse, showed that a contract for the construction of the courthouse was valid and enforceable.

Appeals from Union Chancery Court, Second Division; *George M. LeCroy,* Chancellor; reversed.

STATEMENT OF FACTS.

The complaint in each case was filed by taxpayers of Union County to restrain the defendants from proceeding further in the erection of a courthouse in Union County, Arkansas. The defendants are the county judge of Union County, the commissioners of public buildings and a contractor for the erection of the courthouse.

The record shows that on the 25th day of May, 1927, the defendant, William Peterson, entered into a written contract with the county judge of Union County and the commissioners of public buildings thereof to erect a courthouse according to the plans and specifications written in the contract. He was to receive, as compensation therefor, the sum of $692,500, to be paid by warrants drawn on the county treasurer and payable out of the county general revenue fund. The warrants were made payable as follows: $95,000 payable on demand, $45,000 payable on August 1 each year from the years 1928 to 1940, both inclusive, and the remaining warrant of $12,500 payable on August 1, 1941. The contract provides that the warrants due in each year shall be considered as the first allowance due and the first warrants issued by the county court for each of said years within the meaning of Amendment No. 11 to the Constitution of Arkansas, and that it is guaranteed by the county that the annual payments provided for shall not be in excess of the revenues of the county for the years named. It is further provided that the county shall not, in any of the

years named, issue warrants which, in connection with the warrants hereby provided for, payable in any year, shall exceed the revenue for that year. The contract further provides that if, because of the issuance and payment of other warrants unlawfully or inadvertently issued in excess of said revenue, there is default in the payment of any warrant issued under this contract, the county shall not issue any additional warrants or incur any further indebtedness until all past due warrants issued hereunder are paid.

Other facts will be stated under appropriate headings in the opinion.

In each case the chancery court found the issues in favor of the defendants, and it was decreed that the complaint should be dismissed for want of equity. The cases involve the erection of the same courthouse, and both cases on appeal will be considered and determined together.

*C. L. Johnson* (for Lake), *Streett & Streett* and *Goodwin & Goodwin* (for Harrell) for appellant.

*Mahony, Yocum & Saye,* for appellee.

HART, C. J. At the outset it may be stated that, under our Constitution, counties are civil divisions of the State for political and judicial purposes and are its auxiliaries and instrumentalities in the administration of its government. *Cole* v. *White County,* 32 Ark. 45, and *Pulaski County* v. *Reeve,* 42 Ark. 54.

Amendment No. 11 deals with the rights and powers of counties with respect to their fiscal affairs. In construing this amendment to the Constitution, this court has uniformly held that the limitation placed upon the counties and the agents thereof is that the counties must live within their annual income derived from a maximum constitutional tax levy. In other words, the limit of the amount for which a county may contract for in any one fiscal year is the difference between the amount of its necessary governmental expenses or fixed charges in running its government and the total county revenue which can be derived from levying and collecting county

taxes in any one year. Therefore the court has said that it was the intention of the people, by organic law, to put the counties of the State, so far as the future is concerned, upon a cash basis. *Polk County* v. *Mena Star Co., ante* p. 76.

While we have said that it was the intention of the amendment to make the revenue of each year pay the indebtedness incurred during that year and that the revenue of a subsequent year should not be applied to pay the liability of a past fiscal year, we do recognize that counties still have the power to contract for the building of a courthouse and to spread out the payments over a series of years, under certain restrictions. We have held that the quorum court may make a levy from year to year up to the constitutional limit of taxes for county purposes and that the county court may set apart so much of this levy for the building of a new courthouse as may be spared after meeting other governmental expenses in running the county. *Kirk* v. *High,* 169 Ark. 162, 273 S. W. 389, 41 A. L. R. 782; and *Ivy* v. *Edwards,* 174 Ark. 1167, 298 S. W. 1006.

We have held that, before the county judge is authorized to build a courthouse, he must do so out of funds already accumulated and on hand, or he must make a budget or estimate of the necessary governmental expenses of running the county, and ascertain if there will be a margin left which, when spread over a series of years, will meet the annual payments provided for in the contract for the construction of a courthouse. We have said that, where the county court, in good faith, finds, upon an investigation of the fiscal affairs of the county, that there will be a margin left, if it be spread over a series of years, sufficient to meet the annual payments for the construction of a courthouse, such contract for the construction of a courthouse will be a valid and enforceable contract, and the annual payments will be considered allocated or appropriated to the construction of the courthouse. This does not amount to an appropriation of the annual payment out of a specific fund, because all

payments must be made out of the county general revenue fund, but they are set apart as appropriated for a specific purpose, although they are a part of the county general revenue fund. Under such circumstances, the annual payments for the courthouse are set apart out of the county general revenue and cannot be diverted from the purpose for which it is levied and collected to satisfy the demands of others than the parties contracted with. This is the effect of the opinion of this court in construing our Constitution, and the amendment makes no change in that respect.

In *Boone County* v. *Keck,* 31 Ark. 387, the court held that a county is not subject to the process of garnishment. A part of the reasoning of the court is applicable to the principle here discussed, and reads as follows:

"Public policy—indeed, public necessity—requires that the means of public corporations, which are created for public purposes, with powers to be exercised for the public good, which can contract alone for the public, and whose only means of payment of the debts contracted is drawn from the corporators by a special levy for that purpose, should not be diverted from the purposes for which it was collected to satisfy the demands of others than the parties contracted with."

In keeping with that principle, the Legislature passed a statute providing that it shall be the duty of the clerk, after the adjournment of the court for the levy of taxes and the making of the appropriations, to open a book in which he shall exhibit each appropriation by the amount appropriated therefor. Crawford & Moses' Digest, § 1986. The same act also provides that every order of allowance made by the county court shall set forth the appropriation out of which the same is to be paid. Section 1989. It is also provided that the taxes levied for county purposes shall be extended upon the tax-books under the general head of county expenses, and warrants drawn by the clerk shall specify the fund or appropriation upon which the same are drawn, respectively, and shall be made payable to the person in whose

favor the allowance is made. Section 1987. These sections are peculiarly appropriate and necessary since the adoption of Amendment No. 11, when considered in the light of the construction placed upon it by this court.

Hence it will be appropriate, if not necessary, to state on the face of the warrants that they were for the building of a courthouse, but it would add nothing to the warrants to write on them that they were to be paid before any other warrants are paid. As we have already seen, a contract for the erection of a courthouse, if valid and enforceable, consecrates or sets apart a certain amount of the general revenue for the erection of the courthouse, but this does not mean any particular part of the general revenue. All that is required is that the amount so segregated and set apart for the construction of a courthouse shall be used for that purpose, and, if the county officers should attempt to divert it, the holder of the warrants would have a right to stop them just as the holders of warrants issued to defray the lawful and indispensable expenses of the several courts of record of the county would have a right to prevent the county officers from using the funds appropriated for that purpose for other purposes until after their warrants were paid. What we have said is but a restatement of the principles of law decided by this court in the cases above cited and other cases cited in this opinion.

In the application of these well-settled principles of law, it is evident that the contract for the construction of the courthouse involved in this suit is not a valid and enforceable contract. It is plain from the decisions above referred to that it is incumbent upon the county court to ascertain from the budget of past years of the quorum court and from estimates of future conditions of the county if there will be annually a margin left to meet the annual payments for constructing a courthouse after the indispensable governmental expenses of running the county are deducted from the total amount of the county general revenue to be annually levied and collected. In this view of the matter, the burden of proof was upon

the defendants to show that this state of facts existed. Instead of doing so, the proof introduced by them shows to the contrary.

According to the testimony of the county judge, which is not contradicted, he was asked to make an estimate of the several amounts which would probably be received out of the general revenues of the county during the years 1927 to 1940, both inclusive. His answer is as follows: "1925, $204,463.50, and 1926, $201,923.78. Receipts for 1927 will be approximately the same as for 1926. I have no way of knowing what the receipts for 1928 to 1940, both inclusive, will be, but I feel justified in making the statement that they should be substantially as much as for the year 1927, and may be much more." He was then asked what had been the expenses of the county for each of the years 1925 and 1926 and what would be the probable expenses of the county for each of the years 1927 to 1941, both inclusive. His answer reads as follows: "Expenses for the year 1925 were $122,447.31, and for 1926 the expenses were $155,-855.19. Expenses for the year 1927 to 1940, both inclusive, including the annual payment of $45,000 on the courthouse, should easily be within the amount of the receipts for those years."

The contract shows that Peterson was to receive $692,500 for the erection of the courthouse. The contract was executed on the 25th day of May, 1927. Under its provisions warrants were to be issued for the total amount of the contract price. Of these $95,000 were payable on demand. Forty-five thousand dollars of the warrants were payable annually on August 1 during the years 1928 to 1940, both inclusive. The remaining $12,500 in warrants was payable on August 1, 1941. Thus it will be seen that $95,000 of these warrants were payable during the year 1927. The total revenue for that year was estimated to be $201,923.78. Expenses of the county government were estimated to be $155,855.19. After deducting the estimated county government expenses for 1927 from the total revenue for that year, there

would only be left $46,168.59. This is a materially less sum than $95,000. Hence it inevitably follows that the contract for the construction of the courthouse is not a valid and enforceable contract when tested by the principles of law above stated.

We are not advised as to the urgent necessity of constructing a courthouse in Union County, but we are fully persuaded that it is better that Union County should undergo temporary inconvenience than that a plain provision of the Constitution should be overridden or disregarded.

It necessarily follows that the chancery court erred in dismissing the complaints for want of equity, and the decrees must be reversed; and the cause will be remanded with directions for further proceedings in accordance with the principles of equity and in conformity with this opinion. It is so ordered.

### REHEARING OPINION.

HART, C. J. Counsel for appellees in their motion for rehearing contend that the court erred in finding that the revenues of the county derived from all sources for the year 1927 were insufficient to pay the legal and indispensable running expenses of the county and the installment of $95,000 due in that year for the construction of the courthouse; and in this contention we are of the opinion that counsel for appellees are correct. While counsel for the parties referred to the record in both cases in their original brief, we were led to investigate the case last tried for a more complete statement of the facts. Upon reexamination of the record in case No. 202, we find that it shows that on the 15th day of February, 1926, which was an adjourned day of the levying court for 1925, the county judge and the members of the quorum court made an investigation of the financial affairs of the county, and found that $50,000 of the initial payment of $95,000 was left over after paying the budget of the county for 1925; that $45,000 would be left after paying the running expenses for 1926 for each succeeding year for fifteen years. Thus it will be seen that it was

ascertained that the county had $95,000 on hand at the time the contract for the construction of the courthouse was executed on May 25, 1927, which was available to make the first payment, and for this reason the warrants for the payment of the initial payment of $95,000 were made payable on demand.

It follows that we erred in our finding of facts as indicated in our original opinion, and, on account of that error, the petition of appellees will be granted. We adhere to our conclusions of law as stated in our original opinion, and, under our finding of facts herein, as applied to our conclusions of law, the opinion of the chancellor in the consolidated cases was correct, and the decree will therefore be affirmed. It is so ordered.