VAN NORMAN v. REYNOLDS.

Opinion delivered July 2, 1928.

*E. A. Williams* and *Dean, Moore & Brazil,* for appellant.

*Strait & Strait,* for appellee.

WOOD, J. This is an action by certain citizens, residents and taxpayers of Conway County, Arkansas, against the county judge of that county and the commissioner appointed by the county court to superintend the erection of the courthouse, and the contractor, with whom a contract was entered into for the building of the courthouse, to restrain them from performing their contract.

The plaintiffs alleged seventeen reasons why the courthouse should not be built, all of which have been abandoned here except the following:

(1) Because the county is unable to build a courthouse on the plan outlined and leave sufficient revenue to meet the county's necessary expenses of government, which would be contrary to provisions of act No. 11. (2) That the attempted appropriation for the building of the courthouse was illegal and void, as all of the 5-mill levy that could be appropriated under the statutes was appropriated before the attempted appropriation of $1\frac{1}{2}$ mill for the purpose of building the courthouse. (3) That the matter of building a courthouse was not properly presented to the quorum court, and no sane and reasonable estimate of the county's necessary running expenses was attempted to be made by the quorum court. (4) That the contract entered into by the county judge and the building commissioner with the contractor is illegal and void, because it is in violation of the statute and Constitution forbidding the payment of interest by counties.

Issue was joined by the defendants on the above alleged grounds.

The cause was heard by the chancery court upon the pleadings and the depositions of witnesses, together with certificates of officers and certified copies of record attached to the depositions of witnesses, and the court made a general finding in favor of the defendants. The court entered its decree dismissing the complaint for want of equity, from which is this appeal. We will con-

sider the alleged grounds for injunction in the order in which they are stated by appellant's counsel.

1. In the recent case of *Tatum* v. *Tatum*, 175 Ark. 90-95, 1 S. W. (2d.) 554, we said: ''It is incumbent upon the county court to ascertain from the budget of past years of the quorum court and from estimates of the future condition of the county if there will be annually a margin left to meet the annual payments for construction of a courthouse after the indispensable governmental expenses of running the county are deducted from the total amount of the county general revenue to be annually levied and collected.'' In this view of the matter, the burden of proof was upon the defendants to show that this state of facts existed.

It appears from the records of the county and quorum courts of Conway County that the courthouse in that county was destroyed in January, 1927. The judge of the county court, who presided over the quorum court during its deliberations, testified, among other things, as follows:

''I have ascertained from the record the amount of income of Conway County per annum for the last two or three years, and am in possession of the facts showing the income. The amount of the general revenue of the county for general purposes for the year 1927 from all sources was $38,833.33. My estimated total income for the county general purposes for the year 1928 is $42,678.78. I am familiar with the current general expenses of operating the business and affairs of the county per annum. There will, from the amount of income, be a surplus over and above the necessary and economical administration of the affairs of the county, amounting to approximately a little more than $8,000. There will be sufficient each year, under present valuation and method of assessment, to operate and conduct the business affairs of the county and meet its expenses and have sufficient to pay the annual installments under the contract for the construction of the courthouse $6,000 each year. The assessed values are increasing in Conway County. The

county itself and the wealth of the county is increasing in value. The letting of this contract and the payment of the contract price in installments of $6,000 a year will not depreciate the value of county scrip. Scrip is on a par basis at this time. The county's income will be sufficient to pay its current expenses and to pay these installments each year in cash as they become due."

On being recalled, the judge further testified that the estimate of the net income for 1928 will be $29,372.26. The net income for 1927 was $29,060.98. He had been county judge a little over five years. The net income for the years 1927 and 1928 is about an average of the county's annual income. The witness then went into detail in explaining the annual revenues and expenses of the county.

It would unduly extend this opinion, and is wholly impractical, to set out and discuss in detail the figures given by the witness in making his estimate of the amount which the county could expend in the building of a courthouse over and above the necessary expenses of county government. The witness was examined at great length, both in his direct and cross-examination, and, after setting forth the sources of income and the necessary expenditures, he stated that the county would have "funds enough to carry on an economical administration of the county's affairs, after paying $6,000 per annum as per contract for the construction of the courthouse."

Two of the members of the quorum court were called as witnesses. They testified that no committee was appointed by the quorum court to make a survey of the accounts to determine whether the court could levy 1½ mills for the purpose of building a courthouse and have enough left to pay the necessary expenses of county government. They relied on the statement of the county judge as to the condition of the county finances, believing he ought to know, as he had been county judge for four years. One of these witnesses stated that he attended all sessions of the court, heard all reports that were made. "The regular order for county clerk to make a detailed

statement of the county finances was made, and seemed to be in regular form. The court adopted it, and that was used as a basis for the action of the court in making the appropriation—that is, we relied on the judge's statement of the county's finances in making the appropriation.''

The county treasurer was called, and the record of the county treasurer for several years back was introduced and statements and certificates by the treasurer, showing the amounts of revenues received from various sources and the amounts paid out by him, and the condition of the treasury, which tended to show that there was left to the credit of the general county fund on January 1, 1928, only the sum of 50 cents. It was agreed that all certificates of the county clerk and the report of all the officers of the county pertaining to the general revenue for the year 1927 and many years prior thereto should be introduced and considered as evidence in the cause, and there were many certificates and reports introduced and considered.

M. H. Dean was a witness. He had been circuit clerk of the county from 1902 till 1908 inclusive, and county treasurer from 1909-1912 inclusive, and then again circuit clerk from 1913-1916 inclusive, and county judge from 1918-1922 inclusive. He testified at considerable length. Among other things he said: ''The county's indebtedness had greatly increased through all the years he had been in office up to the present time, and was now $96,900 in debt.'' As to the increase, says the witness, ''the only way I can account for it, there is not enough revenue derived to meet the county's expenses; in other words, the assessed valuation and revenue does not provide enough to meet the expenses of the county. It just won't do it. * * * I have examined the records closely for the last ten years, from 1918-1927, and the assessed valuation of the county for the years 1923, '24, '25, '26, and '27—that is, the highest valuation for these years—is lower than the five years preceding.''

After a careful examination of this voluminous record we are unable to say that the finding of the chancellor on this issue of fact is clearly against the preponderance of the evidence.

In *Ivy* v. *Edwards,* 174 Ark. 1167, 298 S. W. 1006, we said: "It would be impossible to build a courthouse if speculation and conjecture merely should be allowed to enter in the making the estimates as to the amounts necessary to pay the necessary government expenses. In other words, a mere suggestion that it might take all the revenue in any current year to pay the necessary government expenses should not preclude the quorum court from authorizing the construction of the courthouse if a sane and a reasonable estimate disclosed that there would be sufficient to build the courthouse on the installment plan, after paying the necessary expenses for government." Judge M. H. Dean, because of his connection with the financial affairs of Conway County as clerk, treasurer and county judge for twenty years, to be sure, was exceedingly conversant with the finances of the county. According to his testimony, there was not enough revenue to meet the county's expenses. He had seen the county's debt pile up through all these years until it was now $96,900. But, during the time Judge Dean was connected with the financial affairs of the county in the various offices mentioned, there was no constitutional provision, such as is now contained in Amendment No. 11, prohibiting the making of any contracts or allowances, for any purpose whatever, in excess of the revenue for the fiscal year in which the contract or allowance is made and attaching severe penalties by way of fine and removal from office of any officers who had violated the provision of the Constitution. No doubt Judge Dean was a faithful and efficient county judge, and he did all in his power, as the testimony shows, to meet the expenses of the county government with the revenue as it came in. But it is a matter of common knowledge that, with no restriction upon the power of county courts to incur indebtedness, many of the counties of the State had incurred a

large indebtedness, Conway County among them. But, under the new regime inaugurated by the adoption of Amendment No. 11 to the Constitution, it is now impossible for county judges to involve their counties in debt without incurring heavy penalties. Therefore the viewpoints from which Judge Dean on the one hand and Judge Reynolds on the other viewed the fiscal affairs of their county were entirely different. Judge Dean was out of office, and no longer charged with the responsibility of managing the affairs of the county. Judge Reynolds, who is the present incumbent of the office and has had the responsibility of managing the finances of the county since the adoption of Amendment No. 11, explained before the quorum court the condition of the finances of the county at the time that court made the appropriation for the building of the courthouse. The testimony shows that the indebtedness of the county had been paid, under the provisions of Amendment No. 11, and that the court had before it a detailed statement of the county's finances made by the county clerk; so it was determined by the quorum court and the county court, before it entered into the contract, that the revenue would be sufficient to meet all other expenses of the county government and to provide the necessary funds for the building of the courthouse.

In *Lake v. Tatum*, 175 Ark. 90-93, 1 S. W. (2d.) 554, we said: "Where the county court, in good faith, finds, upon an investigation of the fiscal affairs of the county, that there will be a margin left, if it be spread over a series of years sufficient to meet the annual payments for the construction of a courthouse, such contract for the construction of a courthouse will be a valid and enforceable contract, and the annual payments will be considered allocated or appropriated to the construction of the courthouse."

Without pursuing the matter further, we are convinced that the county court of Conway County acted in good faith in finding that the general revenue of the county would be sufficient to enable the county to pay the

necessary expenses of county government and at the same time make the annual payments required by the contract for the building of the courthouse. At least we are unable to say that the evidence does not preponderate in favor of such finding of fact by the trial court.

2. Learned counsel contend, in their second proposition for reversal, that the attempted appropriation for the building of the courthouse was illegal and void, as all the five-mill levy that could be appropriated under the statutes was appropriated before the attempted appropriation of 1½ mills for the purpose of building the courthouse. The record shows that the quorum court, at its regular November term, 1927, levied a 5-mill tax for general county purposes, and then appropriated 1½ mills of this tax for the construction of a courthouse. Later, at a special term, the quorum court was regularly convened December 23, 1927, at which term the court passed the following resolution:

"Whereas, it has been calculated that the amount of money necessary to pay said warrants as they mature in twenty installments of $7,000 each will be realized by levying a tax of 1½ mills, be it ordered, adjudged and decreed by the quorum court of Conway County, Arkansas, that a tax of 1½ mills on the dollar of the assessed value of all the taxable property within said county is hereby levied to pay the installments of said warrants of not exceeding the amount of $140,000, maturing serially $7,000 per year for twenty years, beginning in the year 1929. That during each of the years, while any of said warrants are outstanding and unpaid thereon, there shall be calculated the amount of money necessary during each of said years to pay the current installment maturing during said years, and that a tax at a rate sufficient to raise said money shall be levied by the quorum court and collected during each of said years, and is hereby ordered levied."

This procedure followed closely that which was adopted by the quorum court of Benton County in making the levy and appropriation for the building of a court-

house, which was held valid by this court in the case of *Ivy* v. *Edwards, supra.* No useful purpose can be served by repeating what was there said. According to the doctrine of that case, appellants' second ground for reversal cannot be sustained.

3. The appellants' third proposition for reversal is that the matter of building a courthouse was not properly presented to the quorum court and no sane and reasonable estimate of the county's necessary running expenses was attempted to be made by the quorum court. This involves a question of fact which we have already determined in disposing of appellants' first proposition for reversal. It follows, from what we there said and our conclusion with reference to that, that the third ground urged by appellants for reversal cannot be sustained.

4. The last ground urged by appellants as set forth above is: "The contract entered into by the county judge and the building commissioner with the contractor is illegal and void because it is in violation of the statute and Constitution forbidding the payment of interest by counties." This is purely a question of law, which has already been decided by this court against the contention of appellants in several cases, some of them quite recent, and it would be purely supererogation to reiterate what has been said in former opinions, to all of which we adhere. See *Norman* v. *Blair, ante* p. 649; *Kleiner* v. *Parker, ante* p. 671, and cases there cited. While there is an allegation in the pleadings of the appellants to the effect that the manner of letting the contract is an illegal and fraudulent attempt upon the part of the appellees to conceal their purpose and intent to violate § 1, art. 16, of the Constitution of the State, there is no proof whatever to sustain such contention, according to the doctrine announced in the cases above cited.

The decree of the trial court is correct, and it is therefore affirmed.